EX PARTE ROBERT W. WHITE. ON PETITION FOR A MANDAMUS.

The 2d section of the 5th article of the Constitution of Florida provides that
    " the Supreme Court, except in cases otherwise directed in this Constitution, shall have appellate jurisdiction only, which shall be co-extensive with
    the State, under such restrictions and regulations, not repugnant to the Constitution, as may, from time to time, be prescribed by law; provided, that
    the said Court shall always have power to issue writs of injunction, *mandamus, quo warranto, habeas corpus*, and such other remedial and original
    writs as may be necessary to give it a general superintendence of all other
    Courts :"—Held, that the jurisdiction of this Court is two-fold—first, appellate jurisdiction proper, and, secondly, a general superintendence and control of all other Courts, and this by means of all appropriate, original and
    remedial writs known to the common law. No original proceeding can be
    instituted in this Court, unless it be to exercise this power of superintendence or control over some other Court. The exception in the first clause
    of the section points to the power contained in the proviso, and this power
    the Court would not have had from the mere grant of " appellate jurisdicdiction only."

The term, " other remedial and original writs," means writs *ejusdem generis*,
    such as writs of *procedendo*, prohibition, &c.

On the 6th day of January, 1851, Robert W. White filed in the office of the Clerk of the Supreme Court the following petition :

*To the Honorable the Supreme Court of the State of Florida:*

The petition of Robert W. White, of Jefferson County, in this State, respectfully showeth unto your Honors, that, on the 9th day of December, A. D. 1850, he purchased of David S. Walker, Register of Public Lands for the State of Florida, the west half of the southeast quarter of section sixteen, township one, range three, south and east, at the rate of five dollars per acre, amounting to four hundred 80-100 dollars, and that your petitioner paid one-fourth of the purchase money, and interest on the balance, and gave his bonds for the said balance, as required by the laws of this State. That at the same time, your petitioner entered into a written agreement with said Walker, as Register as aforesaid, by which it was " understood that, notwithstanding said sale, said land was to be offered at public sale, and if it should sell for five dollars per acre, then said White was to take it that price. If it should sell for over five, he was to take it or not as he liked ; but if it should sell for over two dollars and fifty cents per acre, and under five dollars, he was to take it at that price"—a copy of which, your petitioner annexes hereto. Your petitioner further shows that, at the same time, it was understood by and between your petitioner and said Walker, but not in writing, that your petitioner could, at any time before said sale, perfect his purchase, by agreeing to take the land at the price of five dollars per acre, and thus rescind the understanding or agreement in writing above referred to. That afterwards, and on the 19th day of December, 1850, your petitioner wrote to said Walker, as Register as aforesaid, a letter, in which your petitioner stated that he had concluded " to take the land at five dollars per acre, instead of waiting for it to be sold under the last appraisement"—which last ap-

praisement fixed the value of said land at two dollars and fifty cents per acre. That your petitioner subsequently tendered the balance of the money for said land to said Walker, Register as aforesaid, and demanded a deed from said Walker for the same ; but the said Walker refused either to accept the amount tendered, or make a deed to your petitioner, for reasons based on said written agreement, in conjunction with other matters, which your petitioner insists had no connection with this purchase, and should not operate against your petitioner in the premises. Your petitioner, therefore, prays that a rule on the said David S. Walker, Register as aforesaid, to show cause why a writ of *mandamus* should not be issued by this Honorable Court, commanding the said Walker, Register as aforesaid, to convey by deed the said land to your petitioner, upon the payment of the balance of the purchase money due, may be granted, and that, finally, the said Walker, Register, may be commanded to convey said land, as prayed to be directed in said rule, and your petitioner, as in duty bound, will ever pray, &c.

ROBERT W. WHITE,<br>By M. D. Papy.

A rule was taken, returnable at a future day, and on the 3d day of February, 1851, David S. Walker, Register of Public Lands, made the following return to the rule served, viz :

In obedience to the rule upon the Register to show cause why he should not convey by deed to said R. W. White certain land purchased by said White, viz : the west half of the south-east quarter of section sixteen, township one, range three, south and east, upon the payment to him of the balance of the purchase money due therefor, the Register most respectfully shows cause as follows, to wit :

On or about December 9, 1850, said White called at the office of the Register and made inquiry about the terms on which he could purchase said tract, and was told that he

could have it at five dollars per acre.   Said White replied, in substance, that the land was not worth that price and refused to give it unconditionally, but, after much solicitation, persuaded the Register to enter into the arrangement with him evidenced by the following agreement in writing, signed by said White and the Register, to wit :

"R. W. White has this day purchased the west half of the south-east quarter of section sixteen, township one, south of range three, east, at five dollars per acre, one quarter of which he has paid and given his notes for the balance, as the law requires ; but it is understood that, notwithstanding said sale, said land is to be offered at public sale, and if it shall sell for five dollars per acre, then said White is to take it at that price.   If it shall sell for over five, he is to take it or not, as he likes ; but if it sells for over two dollars and fifty cents per acre, and under five, he is to take it at that price.

[Signed]          R. W. WHITE,<br>
[Signed]          D. S. WALKER.

December 9, 1850."

After said White had entered into this written agreement and was about leaving the office of the Register, he remarked in substance, that he presumed he would have the right at any time to enter said land, absolutely, at five dollars per acre, to which the Register replied affirmatively.

On or about the 19th December, 1850, the Register received from said White the letter herewith filed and prayed to be taken as part of this answer, stating that he had concluded to take said tract at five dollars per acre, at which it had been originally appraised, instead of waiting for it to be sold under its last appraisement of two dollars and fifty cents per acre.   The Register would certainly have acceded to this proposition and have entered said land in said White's name, which has not yet been done, but before he had acted in the matter, one K. M. Moore came to

the office of the Register and complained that he had applied to enter said land long before said White, and had been refused the privilege of doing so, on the ground that said tract could not be purchased at private sale until it should first have been offered at public sale at the reduced price, in pursuance of section 6, Thompson's Digest, 115.— Said Moore stated that his application to enter said land was to the predecessor of the present Register in the Register's office, and said Moore also reminded the present Register of a conversation said Moore had with him about the purchase of said land some time since, at Newport, which the Register did not think of at the time of said arrangement with said White. And said Moore insisted that great injustice would be done him, under the circumstances, if said land should not be put up at public auction in pursuance of the written agreement between the said White and the Register, so as to allow said Moore to bid on the same.

Under this state of facts the Register informed said White that he felt it his duty to decline to give him a deed, but would adhere to the written agreement herein set forth, or the Register now offers to rescind that agreement altogether, and refund to said White the money he has paid and return him his notes.

The case was argued by *Papy* for the petitioner, and by *Walker* for the respondent.

THOMPSON, *Justice*, pronounced the opinion of the Court.

Upon the rule on the Register to show cause why a *mandamus nisi* should not issue, the question presents itself— Has this Court jurisdiction, or the power to entertain this application, and award the relief asked for ?

The 2d section of the 5th article of the Constitution provides that "the Supreme Court, except in cases otherwise directed in this Constitution, shall have appellate jurisdiction only, which shall be co-extensive with the State, un-

22

der such restrictions and regulations, not repugnant to the Constitution, as may, from time to time, be prescribed by law ; provided, that the said Court shall always have power to issue writs of injunction, *mandamus, quo warranto, ha-beas corpus,* and such other remedial and original writs as may be necessary to give it a general superintendence and control of all other Courts." Thompson's Digest, 50.

It cannot be doubted that this is an application to this Court for the exercise of an original jurisdiction ; and it is argued for the petitioner, that the section above cited gives the power to this Court to issue the writs specially named in all cases as its original jurisdiction, .and that the phrase with which the sentence concludes : " as may be necessary to give this Court a general superintendence and control of all other courts," is to be restricted to the "other remedial" and original writs," not specifically named. And it is further contended that this interpretation is necessary in order to render operative the exception in the first clause of the section, that " the Supreme Court, *except in cases otherwise directed in this Constitution,* shall have appellate jurisdiction only ;" for, unless the jurisdiction excepted is original and contained in the power to issue the writs specified, there is none given by the Constitution but the appellate jurisdiction, and effect should be given to every part and clause of the instrument.

The exception in the first clause of the section under consideration was probably inserted by the Convention *ex abundanti cautela,* although it would hardly have been necessary, if any original jurisdiction had been granted in any other part of the Constitution to have enabled this Court to exercise it. The language is general ; it does not refer to any particular grant of jurisdiction ; the general character of the Court was to be one of appellate authority, and it was to be confined to that, " except in cases otherwise directed." It does not necessarily follow that some other ju-

risdiction must be intended to have been conferred by the Constitution, or if other jurisdiction is given, it should be original. The exception, however, may, and we think does, point to the power contained in the proviso. The office of a proviso generally is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the Legislature to be brought within its purview. Minis v. The United States, 15 Peters' Reports, 445. As before remarked, the general character of this tribunal was intended to be appellate only. An appeal is defined to be the removal of a cause from an inferior to a superior court (3 Blackstone's Commentaries, 55); and it is said to be the essential criterion of appellate jurisdiction that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. Marbury v. Madison, 1 Cranch, 137.— 1 Peters' Condensed Reports, 282. By a strict application of the term *appellate jurisdiction* it would seem that neither a *mandamus* nor any other original and remedial writ could issue from a superior court to any subordinate tribunal, unless it results as an incident to the appellate power in the revision and correction of the proceedings of a cause therein. Smith v. Jackson, 1 Paine Circuit Court Reports, 454. Hence the necessity of the *proviso* in this section of the Constitution, to qualify and restrain the generality of the language used in the enacting clause, and to except therefrom the powers mentioned in the *proviso*. By this *proviso* power is given to issue writs of injunction, *mandamus, quo warranto, habeas corpus,* and such other remedial and original writs as may be necessary to give this Court a general superintendence and control of all other courts, a power which we think was not necessarily included in the grant of appellate jurisdiction. It places this Court, with regard to all other courts of this State in the same position, in this

respect, which the Court of King's Bench, in England, occupies in relation to the inferior courts of that kingdom. It gives a superintending authority and control—the power to overlook and to govern, check and restrain all other courts.

The position, that the exception in this section may refer to the power to issue the writs specifically enumerated as the original jurisdiction, and that the "other remedial and original writs" not named, are to be alone controlled by the clause, "as may be necessary to give this Court a general superintendence and control of all other Courts," cannot be maintained upon any proper rule of construction. The proviso forms but one sentence; the writs specifically named are designed to illustrate the meaning intended more clearly than could be done by general terms; the terms, "other remedial and original writs," mean writs *ejusdem generis*, of a kindred character, such as writs of *procedendo*, prohibition, *certiorari*, &c., which are to effect a like object, the exercise of a superintendence and control of all other Courts. It is true that some of the writs thus specifically designated do not seem appropriate to the exercise of this power. An injunction, for instance, though often used to restrain proceedings in another Court, yet is directed to, and acts upon, the parties alone; it neither assumes any superiority over the Court in which they are proceeding, nor denies its jurisdiction; but it is granted on the sole ground that, from certain equitable circumstances, of which the Court that issues it has cognizance, it is against the *conscience* of the party to proceed in the cause. Eden on Injunctions, 14. So a *quo warranto* is a writ which lies for the government against any person or corporation claiming or usurping any office, franchise, or liberty, to inquire by what authority the claim is supported, in order to determine the right. Wharton's Dictionary of Jurisprudence, 859. Cases, however, may arise, in which these writs may be useful in exercising this power, but if they do not, it is a

matter of but little moment—it cannot alter the construction, or change the meaning of the instrument. It is very certain they can only be used, if at all, for the purposes and objects expressed.

By the interpretation which we give to this section of the Constitution, effect is given to every part of it, and from it, we deduce the conclusion that the jurisdiction of this Court is two-fold—first, appellate jurisdiction proper, by which we understand the revision of the proceedings of the subordinate Courts, and the correction of errors in their judgments ; and, secondly, a general superintendence and control of all other Courts, and this by means of all appropriate, original and remedial writs known to the common law. No original proceeding can be instituted in this Court, unless it be to exercise this power of superintendence or control over some other Court.

Reference has been made to the Constitution of the State of Alabama, and to the action of its Supreme Court, in the cases of Mead v. Dunn, and Murray v. Ayers, cited from Minor's Reports, 46, 323, as affording some aid in the proper interpretation of this section. On comparison of the Constitution of Alabama with that of our State, it is found that in the clauses defining the jurisdiction of the respective Supreme Courts, the only difference consists in the use of the terms "inferior jurisdictions," in the place of " all other Courts," in the conclusion of the section. In the cases above mentioned, the question of jurisdiction was not raised or decided—in one of the cases, it is suggested by the Court as a doubtful point. In the case of Davis v. The Tuscumbia Railroad Company, 4th Stewart & Porter, 421, 440, which was an original application by bill in equity for an injunction to stay waste, the Court says: " We have no doubt that this Court has authority to issue writs of injunction, when a case calling for the exercise of such authority is presented by the bill ;" but does not give the reasons for

such opinion. It was probably deemed unnecessary, inasmuch as the injunction asked for was refused, because of a want of equity in the bill. In the case of the State *ex relatione* v. Paul, 5th Stewart & Porter, 40, the question of the authority of the Supreme Court of Alabama to exercise the original jurisdiction of granting a *quo warranto* in the first instance was expressly waived, and the writ denied on other grounds; but in *ex parte* Simonton *et al.*, 9th Porter, 383, 389, which was an application for a writ of *habeas corpus*, praying that the right of the petitioners to be admitted to bail might be considered and allowed, the question of jurisdiction was brought directly before the Court for its determination, and it was held that the Supreme Court " does not possess the constitutional power to award the writ which the petitioners have asked for, unless it be to give it a general superintendence and control of inferior jurisdictions. To bring a case within these qualifying terms, it should be shown either that some Court, or that some Judge of a Court, invested with authority to act in the premises, has undertaken to decide upon the case of a party aggrieved, or else without any just cause therefor, has refused to entertain the same." This may now be considered the settled interpretation of this section of the Constitution by the Supreme Court of Alabama, having been recognized in the subsequent cases of John, a slave, v. State, 1st Alabama Reports, 95. *Ex parte* Mansony, Ibid, 98. State v. Williams, Ibid, 342. *Ex parte* Tarlton, 2d Alabama Reports, 35. In the case of the State v. Porter, 1st Alabama Reports, 688, 708, the Supreme Court of Alabama extend the authority of that Court to entertain original jurisdiction of a writ of *quo warranto* to cases in which no Court subordinate to the Supreme Court could act. Without expressing any opinion of the propriety of the decision in the case last cited, we consider that the view taken by the Supreme Court of Alabama, in the case of Simonton,

of the Constitution of that State, agrees substantially with that we have expressed in relation to the Constitution of Florida; and as the petition in this case does not ask for the exercise of the superintending and controlling power of this Court upon the action of any other Court, the prayer of the petition must be denied, and the rule discharged with costs.