### PRICE & BARTON *v.* PAGE, *Treasurer.*

SUPREME COURT—*has original jurisdiction to issue writs of mandamus, &c.* This court has power, by the present Constitution, to issue writs of *mandamus, quo warranto, habeas corpus* and other remedial writs, as an exercise of *original* jurisdiction.

The *clauses* of the Constitutions of 1866 and 1836, respectively, defining the jurisdiction of this court, are *materially* different.

There is no language in the present Constitution capable of being construed into a restriction of the powers of this court to the exercise of *appellate* jurisdiction only.

TREASURY CERTIFICATES. It is the true intent and meaning of the act of July 23, 1868, to *prohibit* the issuing of interest-bearing treasury certificates after July 1, 1869.

T. D. W. YONLEY, for petitioners.

MONTGOMERY, Attorney General, for respondent.

MCCLURE, J.

The first question arising in this case is: Has this court the power, under the Constitution, to grant the writ?

In order to arrive at a proper understanding of this question, it becomes necessary to examine the present Constitution, and ascertain if any change has been made therein whereby the jurisdiction formerly exercised by this court is affected; and, if so, in what respect. The clause of the Constitution of 1836, relating to this court, is as follows: "The Supreme Court, *except in* cases otherwise directed by this Constitution, shall have appellate jurisdiction only. It shall have a general superintending control over all inferior and other courts of law and equity. It shall have power to issue writs of error and supersedeas, certiorari and habeas corpus, mandamus and quo warranto, and other remedial writs, and to hear and determine the same."

From the organization of the State, in 1836, until 1851, a period of fifteen years, this court held that it had *original* jurisdiction to grant writs of habeas corpus, mandamus and quo warranto, and to hear and determine the same. In 1851 this court changed its opinion, and held as long as the Constitution of 1836 remained in force, that this court did not have *original* jurisdiction of any character, and that writs, specifically named in the Constitution, could only be used as a means of "superintending control" and in aid of the appellate jurisdiction of the court. One of the constructions placed upon the Constitution of 1836 must have been erroneous. Whether the opinion expressed in the infancy of the State Government, and at a time, it may be, when the discussions over this clause were yet fresh in the minds of the bar and court, is entitled to more respect and credence than that delivered fifteen years afterward, is a matter that each member of the legal profession must determine for himself, as that question is not before us.

We shall not enter into any lengthy argument to show that the writs of habeas corpus, quo warranto, (and seldom that of mandamus,) are not the proper writs to be used in exercising a superintending control over inferior courts, or as adjuncts necessary to give this court appellate jurisdiction of matters originating in the circuit and other inferior courts. The use

of these writs, and their inapplicability to the purpose of exercising the superintending control contemplated by the Constitution, or as aids necessary to the complete exercise of the appellate jurisdiction of this court, is ably discussed in *Attorney General v. Blossom*, 1 *Wis.*, 317; and to that case we refer those who may desire "more light."

The burden of the argument in *Allis, ex parte,* is intended to show that, under the Constitution of 1836, the design of the framers of the Constitution was that this court should exercise *appellate* jurisdiction *only.* It is a general presumption that every word in a Constitution was inserted for some purpose. We are not at liberty to suppose that the authors of the Constitution indulged in the use of idle and meaningless. phrases; we are not at liberty to say that the men who framed the Constitution of 1836 did not mean any thing by the use of the words "*except in cases otherwise directed by this Constitution.*" If these words have any meaning, it is the province of the court to show to what "cases" these words apply; or, if there are no "cases" to which they apply, then it is the duty of the court to demonstrate that the writs mentioned in the Constitution were not of the class that, under the English practice, the highest court in the realm had jurisdiction of. For, if it appear that the highest court of the country, from which we have drawn our system of judiciary, exercised original jurisdiction in mandamus, quo warranto, and habeas corpus, the inference would be that the words of the Constitution, which limit the jurisdiction of the Supreme Court to an "appellate jurisdiction only," except "in cases otherwise directed," were placed there for the purpose of clothing the highest court of the State with a jurisdiction, so far as the writs mentioned are concerned, equal to that from which the general design was taken.

The words, "*except in cases otherwise directed by the Constitution,*" have been studiously ignored by the learned judge, in Allis, *ex parte.* There is no attempt to show the meaning or intention of these words; there is no attempt to point out the

34

"cases" wherein the jurisdiction of the Supreme Court was not appellate; and, for aught 'that appears in the opinion, one would be led to believe that there were no such words in the Constitution of 1836. The framers of the Constitution of 1836 declared that there were a class of "cases" in which the jurisdiction of the Supreme Court was not "*appellate only.*" If this be true, and no man can refute it, we submit that it was the design of the framers of the Constitution that this court should exercise original jurisdiction over that class of "cases otherwise directed." The words of the Constitution implies an *original* jurisdiction in one class of cases, and an *appellate* jurisdiction as to another. Now, the question to be determined is, what class of "cases" is it in which the Supreme Court was not to have appellate jurisdiction only? He who looks through the Constitution of 1836, for the "cases otherwise directed," in which the Supreme Court was to have jurisdiction that was not appellate only, will find no class of "cases" to which the exception points, save those mentioned in section 2, article 6.

One of the clauses of section 2 says: "It (the Supreme Court) shall have power to issue writs of error and supersedeas, certiorari and habeas corpus, mandamus and quo warranto, and other remedial writs, and to hear and determine the same." It is true that some of the writs herein enumerated may be used as adjuncts necessary to appellate jurisdiction, but it is equally true that some of them never were, and never can be, used for any such purpose. The writ of habeas corpus is used to remove illegal restraint upon *personal* liberty; it issues at the instance and for the benefit of the *individual* who is held in custody; it is the great writ of personal liberty, and yet we are told that it was the intention of the framers of the Constitution to deny to this court the power to issue this writ. The writ of quo warranto is the writ of the sovereign power. It issues *not* to determine the rights of litigants in the inferior courts, but to inquire by what authority the person to whom it is addressed is exercising a portion of the sovereignty of the

State. When the writ of mandamus is employed, in cases like that now before the court, it is not used in aid of a superintending control over the *courts.* The functions of the writ are wholly changed, and it is placed side by side with that class of writs which, originally, were used to protect the State, not only against usurpation, but to compel the exercise of the power or duty enjoined by the supreme power of the State. In this sense, the writ of mandamus, at common law, was regarded as an original writ. Bouvier, in defining the meaning of "original writ," as understood and used in the English practice, says: "It is issued in the King's name, sealed with his great seal, commanding the wrong-doer, or party accused, either to do justice to the complainant, or else appear in court and answer the complaint against him." Such is the object of this proceeding, and we can come to no other conclusion than that the words, "*except in cases otherwise directed by this Constitution,*" point with unerring certainty to those original common law writs that, from time immemorial, had been used for the protection of the citizen, and to enforce the proper exercise of the functions of the government through that class of officers who were not at all hours within the jurisdiction of the court.

Admitting, however, that the reasoning of the learned judge, in Allis, *ex parte*, is sound law, and that, under the Constitution of 1836, this court had "*appellate* jurisdiction only," and that the words, "*except in cases otherwise directed by this Constitution,*" are meaningless phrases, and ought to be treated as surplusage and entirely ignored, the decision is not applicable to our present Constitution, as the clauses regulating and defining the jurisdiction of the court are materially different. There is no language in the present Constitution saying that, except in cases otherwise directed, the Supreme Court shall have appellate jurisdiction *only;* nor is there any language in the present Constitution which, by any known rule on construction, can be even tortured into saying that this court shall have *appellate* jurisdiction *only.* Section 4, article 7, of the present Constitution, says that "final judgments in the inferior

courts may be brought, by writ of error, or by appeal, into the Supreme Court, in such manner as may be prescribed by law." The same section further says, that the Supreme Court "shall have power to issue writs of error, supersedeas, certiorari, habeas corpus, mandamus, quo warranto, and other remedial writs, and to hear and determine the same." It may be urged that this court is deprived of all jurisdiction, save that of an appellate character, by the clause declaring that final judgments of inferior courts may be brought into this court by writ of error, or by appeal, as effectually as though the words "appellate jurisdiction only" had been used. We do not admit this.

There would not be any great degree of violence in presuming that the members of the Constitutional Convention of 1868 were acquainted with the different constructions placed on the judiciary clause of the Constitution of 1836; and, if we proceed with this understanding, the inference would be, that, if they were satisfied with the construction last placed upon the jurisdiction of this court, they would have retained that clause *verbatim et literatim;* but, on the other hand, if it should appear that the words upon which the court placed its argument and based its decision, should not be found, the inference would be that the words were left out by design, to the end that the former holding, as to the jurisdiction of this court, might again be exercised. When we ask ourselves why the Convention left the words, "the Supreme Court, except in cases otherwise directed by this Constitution, shall have appellate jurisdiction only, which shall be coëxtensive with the State, under such restrictions and regulations as may from time to time be prescribed by law," out of the present Constitution, and retained the grant as to the power of the court to grant the writs of mandamus, quo warranto and habeas corpus, we can come to no other conclusion than that there was some object in doing so, and that the intention of that object was, that this court should exercise original jurisdiction as to the writs enumerated in the Constitution.

Under the Constitution of 1836, the circuit court was a creature of the Constitution, whose jurisdiction extended to all civil and criminal cases, not cognizable before justices of the peace. To this extent the Constitution declared that the circuit courts were courts of *original* jurisdiction. Under the Constitution of 1868, the circuit court is a mere creature *of the law.* Its jurisdiction is now regulated by the will of the Legislature. An idea seems to have seized upon the mind of the astute judge, in Allis, *ex parte,* that the circuit was the *only* court of original jurisdiction within the State; that it was peculiarly the province of that court to issue all those high prerogative writs which protect the liberty of the citizen, and guard the soverignty of the State. The circuit court is no longer a court of original jurisdiction, by the terms of the Constitution, and whatever there may have been in the position at one time, there is nothing in it now. The statute, in fixing the power of the circuit court to grant a *mandamus,* says: "The several circuit courts of this State shall have the power to issue writs of *mandamus* (now mark to whom it may issue) to the probate court, county court, justices of the peace, and all other inferior officers, in their respective circuits." This grant of power does not authorize the circuit court to issue a *mandamus* to the Treasurer of State. It is true that the Code of Civil Practice says that the " circuit courts shall have original jurisdiction of all actions and proceedings for the enforcement of civil rights, or redress of civil wrongs, *except* where jurisdiction is given to other courts." It may be said that this language confers a jurisdiction equal to that conferred by the Constitution of 1836; that the right sought to be enforced, is a civil right, and therefore within the jurisdiction of the circuit court. We have already intimated that this court, by the Constitution, is clothed with original jurisdiction to grant the writs enumerated therein, and we presume it will not be contended that the Legislature could divest this court of its constitutional jurisdiction.

Judge SCOTT intimates, in Allis, *ex parte,* that, if it should be

shown " that the subordinate courts are incompetent to grant the relief, either from accidental causes or inherent defects, and that a failure of justice would be likely to follow the refusal of this court to grant the writ, that, under peculiar pressing circumstances of that description, this court might afford the relief." It strikes us, that, if the jurisdiction of the court was limited to an *appellate* jurisdiction, by the terms of the Constitution, no *necessity*, no matter how urgent, could make this a court of *original* jurisdiction. The jurisdiction of a court ought not, and never does, depend upon the *necessity* of the moment. The admission that a *necessity* would confer jurisdiction, is a *confession* that the position assumed was not tenable, or that this court will only regard the provisions of the Constitution at its pleasure.

The attention of the court is called to the case of Jones, *et al., v.* The Mayor and Aldermen of Little Rock. We direct the attention of the counsel to the fact that, in the case cited, the application was for an injunction, and that the authorities cited and approved, were only approved so far as they referred to and were applicable to the question then before the court. It will be borne in mind that, in the case of Dudley E. Jones *v.* The Mayor and Aldermen of the city of Little Rock, which was an application for a *mandamus*, and at the same term at which this court refused to grant an injunction, this court assumed jurisdiction, and *disposed of the case on its merits.* At the June term of this court, in Irwin W. Fuller, *ex parte*, it will be borne in mind that the *mandamus* was denied, *not upon the ground that this court did not have jurisdiction*, but because the complainant was not entitled to it on the facts presented to the court.

An injunction is a prohibitory and not a remedial writ, commanding the person to whom *it* is addressed to refrain from a particular act. It may be the final judgment in an action, or it may be used as a provisional remedy only. It is a mere auxiliary, used by the inferior courts for the protection of a right, or the prevention of an injury, until the rights of

the parties may be determined by a court of competent jurisdiction. Such of the members of the legal profession as are familiar with the history and use of the writs of *habeas corpus*, *quo warranto* and *mandamus*, need no argument or essay to convince them that these writs are not of the same lineal descent as that of injunction, and will readily understand the difference between granting a writ that never determines the rights of litigants in the inferior courts and one that does. It may be urged that, in the case of Jones, *et al.*, *v.* The Mayor and Aldermen of the city of Little Rock, the granting of the injunction in that instance would not have affected the rights of parties litigant in the inferior courts. For the purpose of this argument we will admit that it would not. The writ of injunction is not enumerated in the Constitution as among the writs in which this court has original jurisdiction; and, if the injunction had been granted, the power to have done so would have been drawn from the grant contained in the words "other remedial writs." Now we will admit, for the purpose of illustration, that an injunction is a "remedial" writ, and then we ask if it is claimed that this court can obtain *original* jurisdiction by the use of a "remedial writ?" If it will not, it must be conceded that the *silence* of the Constitution denies to this court the power to assume *original* jurisdiction to grant injunctions.

It may be urged that the opinion, in the case of Allis, *ex parte*, has been the law since 1851; and that a due regard to the public interest forbids that the former decisions of this court should be disturbed. We are not responsible for the causes that led to the destruction of the Constitution of 1836, and to the establishing of that of 1868. The decision in Allis, *ex parte*, not only overruled the decision of this court, which had been the law for fifteen years, but is at variance with the decision of the Supreme Court of the State, from which the framers of the Constitution copied the judiciary clause of the Constitution of 1836. Notwithstanding all this, if there had not been a radical change in the judiciary clause of the Constitu-

tion of 1868, we would have deemed it to have been our duty to have sustained the decision in Allis, *ex parte*, even against the judgment of a portion of the bench; not because we believe that case to have been good law, but because of its antiquity, and the confusion that would have followed in the wake of its reversal.

Having disposed of the question of jurisdiction, we will now consider whether the complainant is entitled to the writ.

The prayer of the petition is that " the said Henry Page, Treasurer of the State of Arkansas, be compelled, by the mandate of this court, to deliver to the petitioners a Treasurer's certificate for said sum of money, specified in said Auditor's warrant, dated on the day and date of said Auditor's warrant, and drawing interest at the rate of eight per cent. per annum from the date thereof."

Under the laws previous to the act approved July 23, 1868, there was no provision by which the Treasurer might issue interest-bearing certificates. The act of July 23, 1868, is drawn with little skill, and is susceptible of more than one construction. But, taking the act as a whole, we have come to the conclusion that the intention of the Legislature was to prohibit the issuing of interest-bearing certificates after the 1st of July, 1869. The act of March 16, 1869, does not change the limitation clause in the act of July 23, 1868, nor does the act of March 24, 1869. There are, as before remarked, many unguarded expressions in the acts referred to, and, under all the circumstances that would attend the issuing of the writ, we are of opinion that the writ ought not to issue.

Judges HARRISON and GREGG, dissenting.

HARRISON, J.

We are unable to concur with the majority of the court in the opinion just delivered.

The jurisdiction conferred by the Constitution upon this court, is, in every respect, consistent with its title. As the Supreme Court—the highest in dignity and authority—the

supervision and control over all inferior courts is given to it. A tribunal with such jurisdiction and authority, by which a uniform interpretation of the laws shall be secured, and their execution by inferior tribunals enforced, is expedient and necessary in every judiciary system, and to provide such was the design and purpose in the establishment of this court.

But no necessity existed for conferring upon it concurrent jurisdiction with the circuit and other inferior courts over which it has control, and whose proceedings and judgments it revises, and we find none given, either in express terms or by a plain implication.

Section 4, article 7, which declares and defines its jurisdiction, is as follows:

"The Supreme Court shall have general supervision and control over all inferior courts of law and equity. It shall have power to issue writs of error, supersedeas, certiorari, habeas corpus, mandamus, quo warranto, and other remedial writs, and to hear and determine the same. Final judgment in the inferior courts may be brought by writ of error or by appeal into the Supreme Court, in such manner as may be prescribed by law."

The power to issue the writs named is expressly given, but whether as auxiliary to the jurisdiction already conferred, or concurrently with the circuit courts, must be determined by construction.

Those enumerated are the ordinary and appropriate common law processes for the exercise of the supervision and control over inferior courts, immediately before granted, some of them in their nature revisory only, and the others requisite to the authority of the court in its control over inferior courts. From this apposition and the context, alone, the inference is natural that such power was designed to be in aid of that jurisdiction. As concurrent jurisdiction with the circuit courts, it was neither necessary nor expedient, for they, like the King's Bench in England, are courts of general jurisdiction, and, as such, have an inherent authority, in cases not within the

supervision and control of this court, to issue, hear and determine any of such writs, that may be required for the ends of justice. The remaining provision, that "final judgment in the inferior courts may be brought by writ of error, or by appeal, into the Supreme Court, in such manner as may be prescribed by law," manifestly is no grant of jurisdiction. It merely prescribes the way by which final judgments in the inferior courts may be brought, for review and correction, into this court, and refers to such appellate jurisdiction as already existing. Supervision and control over inferior courts extends to the revision and correction of their proceedings and judgments, as well as compelling them to act and keep within their spheres of duty. Such is not only the natural, plain and obvious signification, but the common law meaning of the terms, and in which sense we must suppose the framers of the Constitution used them. *Carnall v. Crawford County*, 11 *Ark.*, 604.

If, then, it is clear that this last provision is in aid of the appellate jurisdiction of the court, and the preceding one provides instrumentalities and means appropriate and necessary for the exercise of the remainder of its jurisdiction, the conclusion is strong, and to our minds irresistible, that the object of that provision is not to confer further jurisdiction, which we have seen not to be necessary, but only to provide for the due and efficient exercise of that already granted.

The authority of the court to issue these writs as an exercise of original jurisdiction, except as auxiliary to its revisory power and control over inferior tribunals, has been uniformly denied, whenever the question has been raised, since the decision in *Allis, ex parte*, 11 *Ark.* The court, in that case, after a most thorough and mature examination of the subject and its former decisions, which held that it possessed such power, felt constrained, by the force of its convictions, to overrule those decisions, and to declare that it had no such authority.

It is true that the terms employed in declaring the jurisdiction of the court, in the Constitution of 1836, under which

that decision was made, are not exactly similar to those employed for the same purpose in the present Constitution. They are, however, in substance and effect the same. The jurisdiction was conferred in that Constitution in these words: "The Supreme Court, except in cases otherwise directed by this Constitution, shall have appellate jurisdiction only, which shall be coëxtensive with the State, under such restrictions and regulations as may from time to time be prescribed by law. It shall have a general superintending control over all inferior and other courts of law and equity." In the present Constitution, in these: "The Supreme Court shall have general supervision and control over all inferior courts of law and equity." In the former Constitution there were two distinct grants of jurisdiction—one, its appellate, the other, its control over inferior courts. In the present, there is but one grant, but that comprehends and confers the same powers and authority.

But, since the adoption of the present Constitution, the court, in the case of Dudley E. Jones *v.* The Mayor and Aldermen of the city of Little Rock, decided at the last term, declared its approval of these decisions.

The case referred to, in the opinion just read, as between the same parties, at the same term in which the court assumed jurisdiction, was an application for a mandamus to compel the Chancellor of the Pulaski chancery court to grant an injunction; and the court, in assuming jurisdiction, acted in the exercise of its power of control over inferior courts.

The earlier decisions of the court, having been, after mature deliberation, overruled, and the contrary doctrine established and adhered to for nearly twenty years, we can not but feel that the question should be regarded as forever settled and remain at rest.

The second section of the act of the General Assembly, entitled "An act to make Treasurer's certificates bear interest, also, receivable for taxes and debts due the State," approved July 23, 1868, directs the Treasurer, whenever an Auditor's warrant shall be presented, and there is no money in the treas-

ury out of which the same can be paid, to issue a Treasurer's certificate for the amount, to bear eight per cent. interest from date, and makes it receivable for all State taxes and debts due the State, except taxes for school purposes, and debts due the school fund. The concluding sentence of the section contains a proviso, and is as follows: "Said certificates shall be issued on bank note paper; *Provided, however,* that no Treasurer's certificate shall be issued on bank note paper, except it is for one, two, five and ten dollars, respectively." Section 4 says: "No certificate shall be issued, by virtue of this act, on bank note paper, after the first day of July, 1869;" and section 6, that "all Treasurer's certificates, issued by virtue of this act, shall be paid, if presented for payment, out of the first funds paid into the treasury, from the revenue derived from the assessment and collection of 1868."

By a subsequent act, approved March 24, 1869, the certificates were made receivable for all debts due the State, and for all State, county and municipal taxes. It is contended by the Treasurer that the issuing of such certificates after the 1st day of July, 1869, is prohibited by section 4. This can not be the case, unless all certificates, issued by virtue of the act, were to be printed on bank note paper; but such is clearly not the intention. The act provides for the issuance of certificates on all Auditor's warrants, irrespective of amount. If all certificates were to be issued on bank note paper, the proviso is repugnant to the subject and purview of the act, and can not stand. But we think the intent and meaning of the proviso is, that those for one, two, five and ten dollars, should be on that kind of paper, but none other. That section, then, only prohibits the issuing after the first day of July, 1869, of certificates on bank note paper.

The 6th section, which directs that such certificates as might be presented for payment, be paid out of the first funds paid into the treasury from the revenue of 1868, under the mistaken presumption, perhaps, that there would be sufficient to pay all that it should be necessary to issue, only attempts to provide a

fund for their redemption, and does not direct that no more shall be issued, if that should prove insufficient. We, therefore, think it is the duty of the Treasurer, whenever Auditor's warrants are presented to him, and there is no money in the treasury out of which to pay them, to issue certificates upon them.