95 P.2d 676

**ATCHISON, T. & S. F. RY. CO. v. STATE CORPORATION COMMISSION et al.**

No. 4509.

Supreme Court of New Mexico.

Oct. 25, 1939.

W. C. Reid and E. C. Iden, both of Albuquerque, for petitioner.

Filo M. Sedillo, Atty. Gen., and Fred J. Federici, Asst. Atty. Gen., for respondents.

Hana, Wilson & Brophy, of Albuquerque, amici curiae.

SADLER, Justice.

This case is an echo of efforts over the years to maintain as a common carrier the short railway line of The Santa Fe, San Juan and Northern Railroad Company,

(hereinafter designated as the San Juan road), located in Sandoval County, or perhaps better said, to prevent its complete and final abandonment as a common carrier. See San Juan Coal & Coke Company v. Santa Fe, San Juan & Northern Railroad, 35 N.M. 336, 298 P. 663; Taylor, Receiver of Santa Fe, San Juan & Northern Railroad v. Santa Fe Northwestern Railway Company, 38 N.M. 457, 34 P.2d 1102; Santa Fe, San Juan & Northern Railroad v. Helmick, 36 N.M. 157, 9 P.2d 695. In the last-mentioned case, the prohibition proceeding in this court against the Honorable Milton J. Helmick as Judge of the second judicial district sitting in Sandoval County, arose out of Cause No. 1210 on the civil docket of said court, entitled Cleary v. Santa Fe, San Juan & Northern Railroad Company, in which a receiver had been appointed pursuant to 1929 Comp. § 116-406, for the limited purpose of determining whether the company could operate as a common carrier without ultimate loss. We held so much of the order appointing the receiver as employed the sweeping injunction authorized by 1929 Comp. § 32-174, incident to the winding up and dissolution of insolvent corporations was beyond the jurisdiction of the court entering a default decree upon the complaint filed in that case and made our alternative writ permanent against enforcement of the injunctive portions of the decree in their existing form.

Within a few days following the filing of our opinion in that case a second receivership proceeding under our corporation insolvency act was instituted in Sandoval County entitled, Yarborough v. Santa Fe, San Juan & Northern Railroad Company, numbered 1230 on the civil docket of the district court of said county. The two causes appear to have been consolidated at some time following institution of the second suit and carried forward as one proceeding. The petitioner here, The Atchison, Topeka and Santa Fe Railway Company, intervened in the separate suits before consolidation or in the consolidated suits soon after consolidation, asserting title to the steel rails, angle bars, bolts, spikes, etc., located upon the right of way, claiming title thereto under a contract with Cuba Extension Railroad, to whose rights the San Juan road had succeeded. The district court entered a decree in the consolidated cause on June 5, 1939, in petitioner's favor, adjudging to it "title and right to possession of the materials set out in the petition of intervention".

Prior thereto and on May 6, 1939, all the assets of the San Juan road had been sold to J. G. Cleary, as trustee. The petitioner herein, The Atchison, Topeka and Santa Fe Railway Company, following the decree in its favor of June 5, 1939, upon its petition of intervention, was about to proceed with the removal from the right of way of the San Juan road of the steel rails and other property to which it was adjudged title and right of possession when the proceeding here drawn in question was initiated before the State Corporation Commission, one of the respondents herein.

The New Mexico Portland Cement Company, a New Mexico corporation, through its attorneys, instituted the proceeding be-

fore the State Corporation Commission, naming as respondents the Santa Fe, San Juan and Northern Railroad Company and J. G. Cleary, the trustee-purchaser of all its assets. The petition recited many of the factual matters hereinabove related. In addition, it alleged it was organized for the purpose of manufacturing and dealing in cement and other kindred substances, coal and other minerals, and had acquired and was in the process of acquiring certain mines and properties on the line of the former San Juan road. It further alleged that it was dependent upon the rehabilitation and operation of said railroad in order to ship and market its products, and that the threatened removal from the right of way of said railroad of the steel rails and other property above mentioned, would deny it shipping facilities and adversely affect many citizens of the State of New Mexico. Finally, petitioner asserted the said Cleary to be a trustee-purchaser with power in him and his associates to become a corporation and own, operate, exercise and enjoy the properties, franchises and rights formerly belonging to the San Juan road. Undoubtedly this assertion is based upon 1929 Comp. § 116-501.

Petitioner prayed that the Commission notify the respondents to desist from further efforts to remove said rails and from interfering in any way with the ability of said Cleary, trustee, to operate said railroad in the interests of the public and petitioner; that a hearing upon said petition be held and that upon such hearing a permanent order in conformity to the notice to respondents be entered restraining them from removing said rails or contributing in any way to the abandonment of said line of railroad.

In response to the notice served upon it by the Corporation Commission, the petitioner, The Atchison, Topeka and Santa Fe Railway Company, appeared specially at the public hearing on June 16, 1939, for the single purpose of challenging jurisdiction of State Corporation Commission insofar as said hearing related to it. Thereafter on August 28, 1939, the Commission denied petitioner's plea to the jurisdiction and ordered it and said Cleary, as trustee, to file written answers to the petition on or before September 20, 1939. Thereupon and on September 6, 1939, upon petition of The Atchison, Topeka and Santa Fe Railway Company, one of the respondents before the Commission, we issued our alternative writ of prohibition restraining the Commission and its members from proceeding further with said hearing and citing them to show cause why they should not be permanently thus restrained.

The Attorney General, appearing to said writ for the Commission and its members, has filed in this court a motion to quash the same, setting forth three grounds, viz: (1) that petitioner's application and the allegations of the writ do not state facts sufficient to warrant issuance of the writ; (2) that petitioner has an adequate remedy at law for removal of the proceeding to the supreme court under Article XI, section 7 of the Constitution, should any action be taken adverse to petitioner; and, (3) that the petition and alternative writ show on

their face that State Corporation Commission has jurisdiction of the subject matter set forth in the complaint of Portland Cement Company before it and of the petitioner herein.

■ Within the scope of the first objection to issuance of the writ, (in its nature a general demurrer), although not urged upon us in the written briefs filed prior to submission, is the question of our original jurisdiction to entertain a prohibition proceeding against the State Corporation Commission and the members thereof. If we lack such jurisdiction, its absence cannot be waived. Hence, with the aid of supplemental briefs filed by counsel upon this jurisdictional question, we have given it first consideration. The petitioner, having applied for the writ very naturally affirms original jurisdiction in this court to issue it. The respondents and amici curiae deny that we possess such jurisdiction. We agree with them. Our reasons for such conclusion follow.

Article VI of the State Constitution deals with the judicial department. Sections 1, 2 and 3 thereof read as follows:

"Section 1. The judicial power of the state shall be vested in the senate when sitting as a court of impeachment, a supreme court, district courts, probate courts, justices of the peace, and such courts inferior to the district courts as may be established by law from time to time in any county or municipality of the state, including juvenile courts.

"Sec. 2. The appellate jurisdiction of the supreme court shall be coextensive with the state, and shall extend to all final judgments and decisions of the district courts, and said court shall have such appellate jurisdiction of interlocutory orders and decisions of the district courts as may be conferred by law.

"Sec. 3. The supreme court shall have original jurisdiction in quo warranto and mandamus against all state officers, boards and commissions, and shall have a superintending control over all inferior courts; it shall also have power to issue writs of mandamus, error, prohibition, habeas corpus, certiorari, injunction and all other writs necessary or proper for the complete exercise of its jurisdiction and to hear and determine the same. Such writs may be issued by direction of the court, or by any justice thereof. Each justice shall have power to issue writs of habeas corpus upon petition by or on behalf of a person held in actual custody, and to make such writs returnable before himself or before the supreme court, or before any of the district courts or any judge thereof."

The chief source of our original jurisdiction is to be found in the language of section 3 of Article VI of the Constitution, just quoted. We do exercise original jurisdiction with respect to certain matters upon removal from State Corporation Commission. See Article XI, § 7, St.Const.

The jurisdiction of the district court is the subject of Article VI, § 13 of the Con-

stitution. It provides: "The district court shall have original jurisdiction in all matters and causes not excepted in this constitution, and such jurisdiction of special cases and proceedings as may be conferred by law, and appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts, and supervisory control over the same. The district courts, or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition, and all other writs, remedial or otherwise in the exercise of their jurisdiction; provided, that no such writs shall issue directed to judges or courts of equal or superior jurisdiction. The district courts shall also have the power of naturalization in accordance with the laws of the United States. Until otherwise provided by law, at least two terms of the district court shall be held annually in each county, at the county seat."

In Territory v. Ortiz, 1 N.M. 5, the territorial supreme court held it was without original jurisdiction in mandamus against the probate judge of Santa Fe County. Indeed, the court said "original jurisdiction has been given to the supreme court only in the single instance of the granting of a writ of habeas corpus", referring, of course, to the organic act as the source of its judicial power. In reaching this conclusion, the territorial court was applying the doctrine of Marbury v. Madison, 1 Cranch, U.S., 137, 2 L.Ed. 60, that an affirmative grant of original jurisdiction in particular cases implies a negative upon its exercise in any other case. We followed Territory v. Ortiz in applying this doctrine to the facts before us in Thurman v. Grimes, 35 N.M. 498, 1 P.2d 972. Since that case did not involve the question whether prohibition would lie from this court to a state board such as State Corporation Commission, it does not afford a complete answer to the issue confronting us in this case.

In Lincoln-Lucky & Lee Mining Company v. District Court, 7 N.M. 486, 38 P. 580, the jurisdiction of the territorial supreme court in prohibition against the board of County Commissioners of Santa Fe County as a body exercising quasi-judicial powers was asserted in the opinion even though respondents did not oppose issuance of the writ because not directed to a "court". For decision confirming correctness of this pronouncement ordinarily, see State ex rel. Swearingen v. Railroad Commission, 79 Fla. 526, 84 So. 444. Considered as bearing upon our own jurisdiction under similar circumstances, it must be viewed in the light of the fact that the Constitution has intervened. It is interesting to note, too, that the opinion in this case questions the declaration in Territory v. Ortiz that the territorial supreme court had original jurisdiction under the organic act in habeas corpus only.

In State ex rel. Owen v. Van Stone, 17 N.M. 41, 121 P. 611, a proceeding in mandamus against a member of the State Corporation Commission, a state officer, our opinion states that the Washington and Wyoming constitutional provision confer-

ring original jurisdiction on the supreme courts of those states in mandamus, is identical in terms with ours. This is not an accurate statement if understood as embracing the whole section in which original jurisdiction in mandamus is conferred. Nevertheless, the corresponding provision taken as a whole is so nearly identical as to render of peculiar interest a decision from either of those states upon the precise point here involved. A search reveals that the question did arise in Wyoming in the case of State ex rel. Leazenby v. True, 26 Wyo. 314, 184 P. 229. The nature of the case is disclosed by the first paragraph of the opinion reading: "This is a proceeding invoking the original jurisdiction of this court to issue a writ of prohibition against the State Engineer to restrain him from holding a threatened hearing seeking to cancel a permit theretofore issued to construct a reservoir to conserve and impound the waters of Harney creek, in Albany county, Wyo."

The original jurisdiction of the supreme court in the case presented was challenged by demurrer to the petition. The court in a persuasive opinion held it did not have original jurisdiction, saying:

"We are, at the outset, confronted with a question of jurisdiction—whether this court has original jurisdiction to issue a writ of prohibition in a case of this kind against the State Engineer. In the earlier cases in this court, where the original jurisdiction of this court was invoked to issue writs of prohibition, it was contended that this court had power to issue the writ only in cases coming here on proceedings in the nature of appeal or proceedings in error. Dobson v. Westheimer et al., 5 Wyo. 34, 36 P. 626; State ex rel. Mau v. Ausherman, 11 Wyo. 410, 72 P. 200, 73 P. 548. But in those cases it was held that the original power to issue the writ was not confined to cases which first reached this court by appellate proceedings, but it was held that by the provision of the Constitution giving 'general superintending control over all inferior courts' this court was vested with original jurisdiction in proper cases to issue writs of prohibition to restrain the action of inferior courts in excess of their jurisdiction.

"The original jurisdiction of this court is conferred by the Constitution, and it has only such power, in cases originally brought here, as is directly conferred by that instrument, or that is necessary to a full exercise of the powers conferred. 15 C.J. 730, 731, 1025; 7 R.C.L. 1030, 1072, 1076, 1077; 32 Cyc. 623.

"And this applies to the writ of prohibition and other writs. 22 R.C.L. 26. The sections of the Constitution applicable are sections 2 and 3 of article 5, which are as follows:

" 'Sec. 2. The Supreme Court shall have general appellate jurisdiction, coextensive with the state, in both civil and criminal causes, and shall have a general superintending control over all inferior courts, under such rules and regulations as may be prescribed by law.

" 'Sec. 3. The Supreme Court shall have original jurisdiction in quo warranto and mandamus as to all state officers, and in habeas corpus. The Supreme Court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of a person held in actual custody, and may make such writs returnable before himself or before the Supreme Court, or before any district court of the state or any judge thereof.'

"In the Constitutions of a number of the states original jurisdiction is given the Supreme Court to issue writs generally without limitation, and in such cases it is generally held that the writ of prohibition may issue to any inferior tribunal having judicial or quasi judicial powers, whether called a court or not, and even in extreme cases to strictly administrative boards or officers who attempt to usurp judicial functions. 22 R.C.L. 14, 15, 17; 32 Cyc. 601. But it was originally only directed to a court. It is defined by Blackstone as a writ 'directed to the judge and parties of a suit in any inferior court, commanding them to cease from the prosecution thereof upon suggestion that either the cause originally or some collateral matter arising therein does not belong to that jurisdiction but to the cognizance of some other court.' 3 Black.Com. 112. But it will be noticed that the original power granted this court by the Wyoming Constitution is much more restricted than in the states referred to. *The power to issue these prerogative writs is confined to its appellate and revisory jurisdiction, except as enlarged by its 'general superintending control over all inferior courts.' And as to state officers, the original jurisdiction is limited to quo warranto and mandamus.* [Italics ours.]

"In Dobson v. Westheimer, supra, this court intimated at least that its original jurisdiction to issue the writ of prohibition was confined to inferior courts. Chief Justice Groesbeck, in the opinion in that case, said:

" 'So it appears that, either under the common law or by virtue of a statute, the writ will not lie except to prevent the encroachment of jurisdiction by courts, or, at the furthest, bodies exercising quasi judicial functions.'

"And State ex rel. Mau v. Ausherman goes no further than to hold that, under the power of 'superintending control,' this court has original jurisdiction to issue the writ of prohibition to inferior courts; Judge Potter in the opinion in that case, after discussing this provision of the Constitution, saying:

" 'We are of the opinion, therefore, that this court is vested with jurisdiction in proper cases calling for its exercise to issue writs of prohibition to restrain the action of inferior courts in excess of their jurisdiction.'

"It then remains to consider whether the writ of prohibition asked for here is directed to one of the inferior courts of the state.

"The State Engineer is a constitutional state officer, endowed with certain administrative duties relating to the public waters of the state, but is nowhere therein mentioned as a court or given judicial functions, and it would seem that a constitutional provision using the words 'inferior courts' was intended to mean those courts mentioned or provided for in the Constitution. * * *

"So here it seems to us too clear for argument that the State Engineer is not one of the inferior courts of this state referred to in section 2 of article 5 of the Constitution.

"As to whether a court of general original jurisdiction, like our district courts, would have authority to issue a writ of prohibition against an administrative officer such as the State Engineer, when it is alleged that he has usurped judicial powers without authority of law, there seems to be some conflict of authority, and it is not necessary to decide in this case, and we do not decide. The questions raised by the parties in this case as stated herein are interesting and important, but, as we hold that this court has no original jurisdiction to issue the writ of prohibition in a case of this character, it becomes not only unnecessary, but improper, for us to consider or determine those questions in this case.

"We hold that this court, under the Constitution, has no original jurisdiction to issue a writ of prohibition to the State Engineer, and therefore the demurrer will be sustained, the writ will be denied, the order to show cause quashed, and the petition dismissed."

See, also, State ex rel. Richland County v. City of Columbia, 16 S.C. 412, opinion on rehearing, 17 S.C. 80; and Hunter v. Moore, 39 S.C. 394, 17 S.E. 797, cases cited and relied upon in State v. True, supra. In Hunter v. Moore, the supreme court of South Carolina approved the decision in State ex rel. Richland County v. City of Columbia in denying the supreme court jurisdiction to issue prohibition unless directed to one of the inferior courts of the state. It said: "This question of jurisdiction has been twice maturely considered in the comparatively recent case of State [ex rel. Richland County] v. City of Columbia, 16 S.C. 412, and again in the same case, reported in 17 S.C. 80, where a rehearing was allowed solely for the purpose of enabling counsel to discuss the question of jurisdiction, which had not been raised or argued at the original hearing. It was there conclusively determined that the supreme court, in the exercise of its original jurisdiction, has no authority to issue a writ of prohibition, unless it is directed to one of the courts of the state, for the purpose of enabling the supreme court to exercise a supervisory control over the court to which it is directed. In view of the full discussion of this question in the two opinions rendered in the case above referred to, we do not deem it necessary to undertake to add anything to what is there said,

but are content to rest our conclusion here upon the reasoning employed and the authorities cited in those two opinions; so that the only remaining question in this case is, whether the writ of prohibition asked for here is to be directed to one of the courts of the state, for the purpose of keeping it within the limits of its jurisdiction. It seems to us too clear for argument that the town council of Yorkville is not one of the courts of the state referred to in section 4 of article 4 of the constitution, though invested, it may be, with certain judicial powers, for certain prescribed purposes."

In State ex rel. Richmond v. District Court, 45 Wyo. 29, 14 P.2d 673, 678, State v. True, supra, was followed where prohibition was invoked in the supreme court both against the district court and the state bank examiner. While retaining jurisdiction in so far as the petition related to the district court it had this to say concerning its power to employ the writ against the state bank examiner, to-wit: "The state examiner, an administrative officer of the state, appointed by the Governor, obviously not being an 'inferior court,' his action cannot, as prayed in plaintiff's petition, be controlled through such a writ. State v. True, 26 Wyo. 314, 184 P. 229."

In State ex rel. School District v. Clay, 3 Wyo. 393, 31 P. 409, original jurisdiction of the supreme court in mandamus was invoked against the treasurer and board of county commissioners of Converse County. It was held that the supreme court had power to issue mandamus, except as to state officers, only in cases where such writ was necessary to the complete exercise of its appellate and revisory jurisdiction and that the petition did not state a cause of action.

We do not decide the broad question over which under somewhat similar constitutional provisions controversy has raged over the years, namely, whether the clause "it shall also have power to issue writs of mandamus, error, prohibition, habeas corpus, certiorari, injunction and all other writs necessary or proper for the complete exercise of its jurisdiction and to hear and determine the same", as to each writ mentioned, is a separate grant of original jurisdiction; or, whether each is to be employed only in aid of the court's appellate jurisdiction and superintending control over inferior courts, otherwise conferred. In other words, is the power to issue each and every of the writs conferred in the clause just quoted *for jurisdiction* or *in aid of jurisdiction?* As our judicial system existed prior to the adoption of the constitution, the territorial supreme court had expressed itself with entire positiveness that in issuing prohibition to inferior courts, it was in the exercise of its appellate power. Lincoln-Lucky & Lee Mining Co. v. District Court, 7 N.M. 486, 491, 38 P. 580, 582. In Winsor v. Bridges, 24 Wash. 540, 64 P. 780, where prohibition was sought before the supreme court against the board of state land commissioners, the constitutional provision respecting the court's jurisdiction being much the same as ours, as noted in State ex rel. Owen v. Van Stone, supra, the court said: "Under this

provision of the constitution, the authority of this court to issue the writ of prohibition, except where it is necessary to the complete exercise of its appellate and revisory jurisdiction, may well be doubted, and, but for a different rule announced in State [ex rel. Amsterdamsch Trustees Kantoor] v. Superior Court of Spokane County, 15 Wash.St. 668, 47 P. 31 [37 L. R.A. 111, 55 Am.St.Rep. 907], we would be inclined to so hold."

Cases in which the same or a somewhat similar provision to that last above quoted from our constitution has been held to be an independent grant of original jurisdiction to issue the prerogative writs are State ex rel. Amsterdamsch Trustees Kantoor v. Superior Court of Spokane County, 15 Wash. 668, 47 P. 31, 37 L.R.A. 111, 55 Am.St.Rep. 907 (a conclusion questioned in Winsor v. Bridges, supra); Wheeler v. Northern Colorado Irrigation Company, 9 Colo. 248, 11 P. 103; State v. Archibald, 5 N.D. 359, 66 N.W. 234; Attorney General. v. Chicago & Northwestern Railway Company, 35 Wis. 425, 512-523; Cf. State ex rel. Martin v. Farwell, 3 Pin., Wis., 393, 411-416; United States v. Commissioners of Dubuque County, Morris, Iowa, 31. A different view is entertained or indicated in State v. Ashley, 1 Ark. 279, (contra, Price v. Page, 25 Ark. 527 and State v. Johnson, 26 Ark. 281); Ex parte Simonton, 9 Port., Ala., 383; John, a slave, v. State, 1 Ala. 95; Ex parte Mansony, 1 Ala. 98; Ex parte White, 4 Fla. 165; People ex rel. Mulford v. Turner, 1 Cal. 143, 52 Am.Dec. 295; Higgins v. Tax Assessors, 27 R.I. 401, 63 A. 34; Fannin County v. Hightower, 9 Tex.Civ. App. 293, 29 S.W. 187; dissenting opinion of Campbell, J., in State ex rel. Kriebs v. Halladay, 52 S.D. 497, 219 N.W. 125, the correctness of which is affirmed in Warren v. Brown, 57 S.D. 528, 234 N.W. 38.

■ The controversy reflected by the foregoing authorities is interesting and highly important. To define the limits of our own jurisdiction and that of inferior courts created by the constitution is always a matter of grave concern. We should proceed no further than the necessities of each case require. Thus impressed, we hold in the case before us, in line with the supreme court of Wyoming in State v. True, supra, that our original jurisdiction in prohibition is confined to "inferior courts" and does not extend to prohibitory actions against state officers. As to state officers, at least, our original jurisdiction is confined to mandamus and quo warranto. Our original jurisdiction in prohibition arises from our superintending control over inferior courts and is confined to them. Whether we have original jurisdiction of the other prerogative writs named in the "shall also have power" clause of Art. VI, § 3 of the constitution when invoked against others than state officers, boards and commissions, is a question not before us for decision upon which we express no opinion.

■ A different conclusion upon the jurisdictional question would not affect the result in the present case. If we concede

our original jurisdiction to issue the writ, we still are denied the right to employ it in the instant case by the spirit if not the letter of the rule prescribed in State ex rel. Owen v. Van Stone, 17 N.M. 41, 121 P. 611, 613, for our use of the prerogative writs where concurrent jurisdiction to issue same resides both in the supreme court and in the district courts. We should be unable to see any good reason for applying a different rule to prohibition cases from that obtaining where our jurisdiction in mandamus or quo warranto is invoked against state officers. Concerning the use in this court of the two last named writs, we wrote in the Van Stone case as follows:

"1. Under the provisions of sections 3 and 13 of article 6 of the Constitution, this court and the district courts each has original jurisdiction in quo warranto and mandamus against all state officers, boards, and commissions in all cases, whether the proceeding be instituted by the Attorney General, ex officio, in behalf of the state for some prerogative purpose, or be brought by some private person for the assertion of some private right.

"2. This court, in the absence of some controlling necessity therefor, of the existence of which this court is sole judge in each instance, should decline such jurisdiction and will do so in all cases brought at the instance of a private suitor. What will be considered by this court as a controlling necessity, it would be impos-

sible, and indeed improper, to attempt to define in advance.

"3. In the case at bar no controlling necessity is suggested. The sole necessity relied upon by counsel for relator in argument is the absence of any other forum with jurisdiction to try the case. In this he is in error, as we have above seen. The proceeding is instituted solely at the instance and for the sole benefit of relator; the state being merely a nominal party. It is essentially an election contest and no reason is, or can be, we assume, assigned why the rights of relator may not as well as, or better, be determined in the proper district court."

Following the rule thus enunciated we declined jurisdiction in State ex rel. Holloman v. Leib, 17 N.M. 270, 125 P. 601, because invoked at the instance of a private suitor. We quoted from the Van Stone case in Thurman v. Grimes, supra, to stress the fundamental character of this court as a court of review. In Gamble v. Velarde, 36 N.M. 262, 13 P.2d 559, the rule of the Van Stone case was held to have been invoked too late to secure its application if, indeed, the public character of the question there involved would not have denied it application, a question not decided. State ex rel. Capitol Addition Bldg. Commission v. Connelly, 39 N.M. 312, 46 P.2d 1097, 100 A.L.R. 878, merely discloses that the rule was suggested and not insisted upon, being finally waived by consent to an amendment of all pleadings, orders and the writ, naming the state as

the real as well as the nominal party plaintiff.

In Hutcheson v. Gonzales, 41 N.M. 474, 71 P.2d 140, 151, the language of the opinion in the Van Stone case to the effect that this court would in all cases decline jurisdiction in mandamus or quo warranto "brought at the instance of a private suitor" was declared to mean that this court "should decline such jurisdiction and will do so in all cases brought at the instance of a private suitor * * * for the assertion of some private right". Jurisdiction in mandamus was entertained in that case despite the fact it was initiated by a private suitor but only because he sued for the assertion of a public right.

Unfortunately for the petitioner in the case at bar, it occupies the position of a private suitor invoking our original jurisdiction for the assertion of a purely *private* right. If we possessed such jurisdiction, and we are well satisfied we do not, we should have to decline its exercise within the rule announced in State ex rel. Owen v. Van Stone as explained in Hutcheson v. Gonzales.

It follows from what has been said that the alternative writ was improvidently issued. The motion to quash same must be sustained and the petition will be dismissed.

It is so ordered.

BICKLEY, C. J., and ZINN and MABRY, JJ., concur.

BRICE, J., did not participate.