535 P.2d 1088
**Manuel GRIEGO, Petitioner,**

**v.**

**HEALTH AND SOCIAL SERVICES DE-
PARTMENT of the STATE of
New Mexico, Respondent.**

**No. 1437.**

Court of Appeals of New Mexico.

April 30, 1975.

Dennis M. McCary, Johnson, Paulantis & Lanphere, Albuquerque, for petitioner.

Toney Anaya, Atty. Gen., Santa Fe, James G. Huber, Agency Asst. Atty. Gen., Health and Social Services Dept., Santa Fe, for respondent.

OPINION

LOPEZ, Judge.

Griego appeals from a decision of the Health and Social Services Department

(HSSD) which denied his application for AFDC benefits because his available income was $539.95 per month and the standard of need fixed by the Department was $298.00 per month.

The above amounts are undisputed. The question on appeal is whether medical expenses incurred by Griego's deceased son should be included in the computation to reduce the "income" figure so as to bring the petitioner within the standard of need. These medical expenses amount to over $45,000.00.

Griego relies on Baca v. New Mexico Health and Social Services Department, 83 N.M. 703, 496 P.2d 1099 (Ct.App.1972); Chavez v. New Mexico Health and Social Services Department, 84 N.M. 734, 507 P. 2d 795 (Ct.App.1973) and § 13–17–3(B), N.M.S.A.1953 (Repl. Vol. 3, Supp.1973), which provides in part:

"B. Consistent with the federal act, the board shall define by regulation exempt and nonexempt income and resources. *Medical expenses shall not be excluded from nonexempt income or from nonexempt resources.*" [Emphasis added]

It is the nonexempt income which is compared to the standard of need. Section 13–17–4, N.M.S.A.1953 (Repl. Vol. 3, Supp.1973). Griego argues that the emphasized portion of § 13–17–3(B), supra, authorizes the inclusion of his medical bills in the calculation of his nonexempt income. In other words, he asks that the medical expenses be deducted from his available income. The amount of his nonexempt income would then be zero. Consequently, he would be eligible for public assistance. We cannot agree with his reasoning.

█ The central inquiry on this appeal is the meaning of the emphasized portion of § 13–17–3(B), supra. As that sentence admits of no clear interpretation upon an initial reading, it is necessary to go outside the section to determine what the legislature intended. An examination of the repealed Public Welfare Act, §§ 13–1–1 through 13–1–57, N.M.S.A.1953 (Repl. Vol.

3, Supp. 1973), the cases decided thereunder and the changes in the statutory scheme made by the Laws of 1973 is helpful.

Under the repealed law, public assistance was granted to any needy person who "has not sufficient income or other resources to provide a reasonable [level of] subsistence *compatible with decency and health.*" [Emphasis added] Section 13–1–11, supra. The Department, by regulation, established a standard of need. If a person's income was below this standard, he was granted public assistance. Baca v. New Mexico Health and Social Services Department, supra. In the *Baca* case, the Department determined Baca's standard of need to be $116.00 per month. This was exclusive of medical expenses. It was undisputed that Baca had a heart condition, requiring the use of a pace maker, without which he would die. His cost was $5.60 for insurance plus 20% of any excess was covered by insurance. Baca's income from social security being $116.40 and his standard of need being $116.00, he was denied public assistance. He appealed and this court reversed holding that his medical expenses must be subtracted from his income when comparing income to standard of need for eligibility purposes.

Similarly, in Chavez v. New Mexico Health and Social Services Department, supra, the Department determined Chavez' standard of need and income without regard to her medical expenses. She, like Baca, had medical problems requiring medication without which she would likely die. This court again held that the cost of medication had to be subtracted from income before determining eligibility for public assistance. The Supreme Court granted the Department's petition for certiorari, but before the case was decided, the legislature amended the public welfare laws rendering the case moot. Still, the Supreme Court, by way of dictum, disapproved of our holding in the case in that we had created a new unfunded category for assistance. New Mexico Health and Social Services Department v. Chavez, 85 N.M. 447, 513 P.2d 184 (1973).

Before the Supreme Court acted, the legislature did two things which we deem significant. First, it deleted the word, "compatible with decency and health," from the cognate provision to § 13–1–11, supra. Section 13–17–3(A), supra. Second, it enacted the Special Medical Needs Act, §§ 13–15–1 through 13–15–5, N.M.S.A.1953 (Repl. Vol. 3, Supp.1973). This Act specifically covers the Baca and Chavez situations by establishing a program to provide medical care for certain persons not otherwise eligible for public assistance who have serious medical conditions. Section 13–15–3, supra. New Mexico Health and Social Services Department v. Chavez, supra. The parties agree that this Act is inapplicable to Griego's expenses due to the fact that his deceased son was under eighteen years of age. Section 13–15–2(D), supra.

■ While we recognize that the words used in the Special Medical Needs Act, supra, to indicate that medical expenses are to be subtracted from income are the very same words Griego relies on in this case (compare § 13-15-4(B), supra, with § 13–17–3(B), supra), it would be absurd to presume that the legislature enacted the Special Medical Needs Act, supra, to cover situations that would also be covered by the Public Assistance Act, supra. The courts will not indulge in such absurd presumptions. See McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78 (1938). Further, sustaining Griego's position would make the Special Medical Needs Act, supra, useless and we will not impute to the legislature an intention to enact a useless statute. Alvarez v. Board of Trustee of La Union Townsite, 62 N.M. 319, 309 P.2d 989 (1957).

■ Accordingly, we hold that the amount of medical expenses incurred by Griego's son were properly excluded from the Department's computation of nonexempt income resources. The decision of HSSD denying eligibility is affirmed.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

Griego, confronted with a hospital bill of $45,936.92, and medical bills of $301.09 and $3,284.44, all arising from a motorcycle accident of his 17-year-old son who subsequently died, seeks public assistance.

Griego is eligible for public assistance grants if, "Consistent with the [Federal Social Security Act] * * * A. * * * the total amount of his *nonexempt income* is less than the applicable standard of need; and B. *nonexempt specific and total resources* are less than the level of maximum permissible resources established by the board; * * *." [Emphasis added]. Section 13–17–4(A), (B), N.M.S.A.1953 (Repl. Vol. 3, 1973 Supp.).

HSSD contends that medical expenses should not be considered in determining eligibility. It has not carefully considered § 13–17–3 of the Public Assistance Act.

Section 13–17–3 provides guidelines for establishing the standard of need and for income determination.

A. Consistent with the federal act and subject to the availability of federal and state funds, the [health and social services] board shall adopt a standard of need which shall establish a *reasonable level of subsistence.*

B. Consistent with the federal act, *the board shall define by regulation exempt and nonexempt income and resources. Medical expenses shall not be excluded from nonexempt income or from nonexempt resources.* [Emphasis added].

What is meant by "nonexempt income" and "nonexempt resources"? These phrases are important in determining eligibility and income determination.

The board has not defined these phrases as it has been directed to do by statute. By not defining these phrases, in effect, it arbitrarily and capriciously denies Griego relief.

The parties argued the meaning of the following excerpt from part B of § 13–17–3:

B. * * * Medical expenses shall not be excluded from nonexempt income or from nonexempt resources.

This excerpted portion of the statute is thoroughly confusing not only because of the double negatives, but also because expenses and income do not appear on the same side of the ledger.

"Non" means "absence of". "Exempt" means "excepted from the operation of some law or obligation: not subject to: not liable to—* * * (tax-exempt)". Webster's Third New International Dictionary (1966), at 795, 1535.

Therefore, "nonexempt income" is income (1) that is characterized by the absence of an exception to the law; or (2) that is subject to the law.

HSSD defined "income" according to its Regulation 221.832(C), which reads:

"Income" includes money received from earnings, income from income producing real or personal property resources, pensions and similar financial benefit plans, support obligations and regular contributions.

Accordingly, "nonexempt income" refers to those items set forth in the regulation which are subject to the provisions of the Public Assistance Act [§ 13–17–1 et seq., N.M.S.A.1953 (Repl. Vol. 3, 1973 Supp.)]. For the purpose of determining eligibility for public assistance, "nonexempt income" would refer to those items which are totaled into a figure that is compared with the applicable standard of need. Section 13–17–4(A).

Similarly, the phrase, "nonexempt resources", in § 13–17–3, refers to resources that are subject to the provisions of the Public Assistance Act.

Synonyms for "excluded" are "left out" and "not included". 1 Roget's International Thesaurus, at 36. The phrase "shall not be excluded from" in § 13–17–3(B) means, "shall be included in" or "shall not be left out of".

These definitions can be put together into a paraphrase of the above-quoted sentence from § 13–17–3(B), in order to decipher its meaning when applied to § 13–17–4(A). Paraphrasing § 13–17–3(B) as applied to § 13–17–4(A), we get the following:

Medical expenses shall be included in those income or resource items which are totaled into a figure that is compared with the applicable standard of need.

Authors of legislative enactments and legislators ought to remind themselves repeatedly of the importance of clarity. They might keep in front of them a copy of a Scottish law that has been called the world's "most inexplicable statute":

In the Nuts (unground), (other than ground nuts) Order, the expression nuts shall have reference to such nuts, other than ground nuts, as would but for this amending Order not qualify as nuts (unground) (other than ground nuts) by reason of their being nuts (unground). N. McWhirter and R. McWhirter, Guiness Book of World Records (1974), at 385.

Justice Benjamin Cardozo once confided to a friend, "I do love words, more, probably, than a wise man should." In Cooper v. Dasher, 290 U.S. 106, 109, 54 S.Ct. 6, 7, 78 L.Ed. 203, 204 (1933). Mr. Justice Cardozo said:

Words after all are symbols, and the significance of the symbols varies with the knowledge and experience of the mind receiving them.

Perhaps the authors of the Public Assistance Act and the legislators understood the symbols in the "medical expenses" sentence when they enacted it into law. But I am convinced that they did not.

The intent of the disputed sentence was to benefit eligible persons in need of aid or relief. That is what "public assistance" means. Section 13–17–2.

One of the reasons is that § 13–17–12(A) provides that " * * * the department shall provide necessary hospital care for recipients of public assistance * * *."

Medical expenses should be considered in determining whether Mr. Griego is eligible for public assistance. Section 13–17–9 provides for "Aid to *families* with dependent children." Medical expenses of children fall within the area of "aid to families".

Subsections (A) and (B) of § 13–17–3 must be interpreted in a consistent fashion. In order to "establish a reasonable level of subsistence", as required by Subsection (A), medical expenses must be deducted when determining net nonexempt income (Subsection (B)), in order to determine eligibility. This is the only consistent interpretation of Subsections (A) and (B).

Griego's medical expenses far exceed the benefits he receives from the federal government. This fact establishes that Griego is eligible to receive public assistance under the 1973 Public Assistance Act.

Section 13–17–3(B) directs the Health and Social Services Board to "define by regulation *exempt and nonexempt income and resources.*" [Emphasis added]. The Board has not done so. I have given in this opinion definitions of the key words in the italicized expression which lead to a conclusion that Griego is eligible for assistance. Until the Board complies with the statute and provides definitions which lead to a contrary conclusion, there is no basis for denying Griego assistance.