547 P.2d 1145

Felipita **MONTANO**, Gregorio Montano, Herinia Jacquez, Oral Felkner, Bill Barton, Harry Romine, Gladys Romine, Appellants,

v.

**HEALTH AND SOCIAL SERVICES DEPARTMENT of the State of New Mexico, Appellee.**

**No. 2214.**

Court of Appeals of New Mexico.

March 9, 1976.

Timothy Meehan, Farmington, for appellants.

Toney Anaya, Atty. Gen., Santa Fe, Richard A. Griscom, David S. Cohen, Sp. Asst. Atty. Gen., for appellee.

## OPINION

HENDLEY, Judge.

Appellants appeal a decision terminating their benefits of homemaker services by the Health and Social Service Department because their income was in excess of the department's income eligibility requirements H.S.S.D. Reg. 130.223 (Revised March 1, 1974). Appellants' points for reversal are that: (1) the decision is not in accordance with law; (2) the decision conflicts with prior decisions of this court; and (3) the decision is arbitrary, capricious and an abuse of discretion.

We affirm.

*Decision in accordance with law*

Under this point appellants' contend the department's decision conflicts with Public Law 93-66 § 212 (1973) an amendment to the Social Security Act. Under this amendment known as the Supplemental Security Income Program (S.S.I.) 42 U.S.C. § 1381, et seq. the federal government took over full responsibility for Aid to the Aged, Blind and Disabled (AABD). Prior to this time, December 31, 1973, the federal and state governments provided joint assistance. States which had given higher than the uniform level prior to December 31, 1973, were required (Grandfather Clause) if federal aid was to be maintained, to maintain the old level of assistance. 42 U.S.C. 1382 (note). These amendments were recognized by amendments to the state's Public Assistance Act. Sections 13-17-6 through 13-17-8, N.M.S.A.1953 (Repl.Vol. 3, 1968, Supp.1973). We need not discuss the individual situations of the various appellants, some of whom started receiving homemaker services after the amendment, since the issue is what is the meaning of the word "assistance" as contained within the Act.

Two sources are helpful. First, the Congressional Record—House, Vol. 119, No. 104, H5789 sets forth some of the concerns prior to the enactment of § 212, supra. Mr. Mills of Arkansas stated:

"A number of features of the program have caused widespread concern. To meet these concerns several provisions were adopted and the first and perhaps most important of these is an assurance that anyone receiving welfare payments under the existing programs for the aged, blind and disabled in December 1973, *will not receive a reduction in total income* when the program becomes Federal in January 1974. The amount of the supplemental security income payment, together with a State supplementation, if one is necessary to achieve this result, will at least equal the amount of assistance which they receive in December 1973.

"This provision would give continuing assurance that persons on the rolls in December 1973 *would not lose income* as a result of the Federalization of the pro-

gram. The cost to the States and the Federal Government will decline as fewer and fewer of the December 1973 eligibles are on the rolls. The requirement would not apply where there was a bonafide change in circumstances which reduced need and a specific exception is made for one State which cannot provide State supplementation under its constitution." (Emphasis added).

Second, 20 CFR § 416.2050 states in part:

"(b) *December 1973 income.* 'December 1973 income' means an amount equal to the aggregate of:

"(1) *Money payments.* The amount of the aid or assistance in the form of money payments (as defined in 45 CFR § 234.11(a)) . . . ."

45 CFR § 234.11(a) defines money payments under title IV–A as follows:

". . . Money payments are payment in cash, checks, or warrants immediately redeemable at par, made to the grantee or his legal representative with no restriction imposed by the agency on the use of funds by the individual."

Appellants would have us focus on all the benefits which they received. However, it is apparent that the homemaker services, which included home delivered meals, housekeeping assistance, assisting with the household budgets, transportation, etc., was not in the form of cash or warrants (contrast *McMahon v. Trainor,* (D.C.N.D. of Ill. No. 75C291) decided June 20, 1975, where homemaker services were paid for in the form of cash payments) which was contemplated by the foregoing legislation. Thus, the Grandfather Clause did not include the equation of homemaker services to a dollar amount. The department's decision was in accordance with the law.

*Prior decisions not in conflict*

Appellants would have us hold that the department's decision is contrary to prior case law. This point is without merit and is controlled by *Griego v. Health*

*and Social Services Department,* 87 N.M. 462, 535 P.2d 1088 (Ct.App.1975) and *New Mexico Health and Social Services Department v. Chavez,* 85 N.M. 447, 513 P.2d 184 (1973).

*Decision not arbitrary, capricious or an abuse of discretion*

Appellants contend here that the department failed to update their standards of need. This contention is apparently based on the department's last revision being March 1, 1974. This argument is also without merit. The violation which is claimed relates to AFDC and not AABD subsequently amended to S.S.I. Further, appellants income was not below the poverty level.

Having decided the appeal on its merits in favor of H.S.S.D. its motion to dismiss the appeal, previously taken under advisement, is denied.

Affirmed.

IT IS SO ORDERED.

SUTIN and LOPEZ, JJ., concur.