573 P.2d 213

**STATE of New Mexico ex rel. James A. BIRD, State Highway Engineer for the State of New Mexico, Petitioner,**

**and**

**State of New Mexico ex rel. State Highway Commission for the State of New Mexico, Intervenor,**

**v.**

**The Hon. Jerry APODACA, Governor of the State of New Mexico, Respondent.**

**No. 11707.**

Supreme Court of New Mexico.

Dec. 28, 1977.

Rehearing Denied Jan. 10, 1978.

Olmsted & Cohen, Charles D. Olmsted, Santa Fe, for petitioner and intervenor.

Toney Anaya, Atty. Gen., Thomas L. Dunigan, Deputy Atty. Gen., Santa Fe, for respondent.

OPINION

McMANUS, Chief Justice.

Petitioner, James Bird, was appointed State Highway Engineer by the State Highway Commission pursuant to § 55–2–1.6, N.M.S.A. (Supp.1975). Governor Apodaca, respondent herein, sought to transfer petitioner from the Highway Department to the State Parks and Recreation Commission under a statutory provision, § 5–4–3, N.M.S.A.1953, which allows such transfers "as in his judgment may be necessary or convenient at any time to further the economical and efficient conduct of the state government . . ." The temporary transfer would terminate on March 31, 1978. On that date the Highway Department Organization Act takes effect and requires the consent of the Governor for the appointment of "Chief Highway Administrator," the equivalent to the current State Highway Engineer. Section 55–2–15, N.M.S.A.1953 (Interim Supp.—New Mexico Executive Reorganization Laws 1977).

Petitioner brought this mandamus proceeding seeking an order directing respondent to "cease, desist and refrain from removing or transferring" the petitioner or from interfering with the petitioner's performance of his duties as State Highway Engineer. Petitioner questions the Governor's power to effect the transfer and submits that the office of State Highway Engineer is not subject to § 5–4–3, supra. Respondent contends that mandamus is not the proper remedy since the issue to be resolved is based solely upon the judgment and discretion of the executive officer and mandamus will not lie to interfere with the exercise of discretion. Respondent also contends that the relief requested is actually a matter for a writ or prohibition or injunction and prohibition will not lie against a state officer. Therefore, the threshold question to be considered is whether mandamus is the proper remedy and this is the proper court in which to bring the action.

Mandamus and prohibition are extraordinary writs which fall within the purview of this Court's original jurisdiction by virtue of Art. VI, § 3 of the Constitution of New Mexico. Mandamus and quo warranto may be issued against all state officers, boards and commissions, and mandamus may also be used in conjunction with the Supreme Court's supervisory control over inferior courts. N.M.Const. art. VI, § 3. Prohibition, by its very nature, will not lie against state officers. *Atchison, T. & S.F. Ry. Co. v. State Corporation Com'n*, 43 N.M. 503, 95 P.2d 676 (1939). It is properly invoked only against an inferior court to prevent such a court from acting either without jurisdiction or in excess of its jurisdiction. *General Atomic Co. v. Felter*, 90 N.M. 120, 560 P.2d 541, *rev'd on other grounds*, —— U.S. ——, 98 S.Ct. 76, 54 L.Ed.2d 199 (1977). Clearly petitioner's requested relief is neither styled prohibition nor sounds in prohibition.

However, respondent contends that since petitioner is requesting negative

relief, i. e., "to cease, desist and refrain," that mandamus is inappropriate. Although such a position has been stated in dicta in a previous case, *Harriett v. Lusk*, 63 N.M. 383, 320 P.2d 738 (1958) (wherein the relief sought was a declaratory judgment and an injunction), this Court has also clearly stated otherwise. In *Kiddy v. Board of County Com'rs of Eddy County*, 57 N.M. 145, 152, 255 P.2d 678, 683 (1953) it was said, "Public functionaries may be restrained by mandamus from doing what they know is an illegal act." *See also, Sender v. Montoya*, 73 N.M. 287, 387 P.2d 860 (1963). Mandamus is defined to include an order "directing the restoration of the complainant to rights or privileges of which he has been illegally deprived." Black's Law Dictionary 1113 (rev. 4th ed. 1968). We feel that the petition is properly styled mandamus and the requested relief is within the scope of the mandamus remedy.

■ As a corollary to this initial question, the respondent submits that this is not the proper tribunal for such a decision and that this petition should properly be brought before the district court for an initial factual determination. It is true that the district court also has original jurisdiction in mandamus, N.M.Const. art. VI, § 13, but we have construed these constitutional provisions as granting concurrent jurisdiction to the Supreme Court and the district courts. *Owen v. Van Stone*, 17 N.M. 41, 121 P. 611 (1912). This Court will generally defer to the district court so that we may have the benefit of a complete record and so the issues may be more clearly defined. But when issues of sufficient public importance are presented which involve a legal and not a factual determination, we will not hesitate to accept the responsibility of rendering a just and speedy disposition. *See, e. g., State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 524 P.2d 975 (1974).

■ An additional matter to be considered before reaching the legal merits is whether there is a plain, speedy and adequate remedy at law. The respondent takes the position that mandamus is not a proper remedy, but he also does not enlighten us as to any alternative. A declaratory action or a request for injunctive relief may have been considered but we also perceive the inadequacy of these remedies. The transfer sought to be effected by the respondent is temporary as § 5–4–3, supra, clearly provides. The delays inherent in proceeding in district court and a subsequent appellate review would render the question moot before a final resolution could ever be had by an aggrieved party. The nature of the injury is also such that it cannot be remedied by an award of damages. The petitioner is not being deprived of his salary or tenure for which compensation would be appropriate. Petitioner is being deprived of the duties, responsibilities and authority he was given by law when he was properly appointed to his position as State Highway Engineer. Therefore, it is apparent that no plain, speedy or adequate remedy, other than mandamus, exists whereby petitioner's rights may be protected. Mandamus will lie where ordinary proceedings would be inadequate. *E. g., State ex rel. Sego v. Kirkpatrick, supra; Montoya v. Blackhurst*, 84 N.M. 91, 500 P.2d 176 (1972).

■ The respondent next asserts that judicial intervention is inappropriate because the alleged improper act was within the scope of executive judgment and discretion to determine the most effective use of executive employees. If this was the only basis for petitioner's complaint we would agree. Executive discretion cannot be controlled by mandamus. *Mitchell v. King*, 537 F.2d 385 (10th Cir. 1976). We view the matter differently, however. The issue presented here deals with the conflict between a general power constitutionally conferred on the highest executive officer to carry out his duties to see that the laws are faithfully executed by his subordinates, N.M.Const. art. V, § 4, and that state officers are competent and conscientious in performing their duties, N.M.Const. art. V, § 5; and the constitutionally conferred duty and power of the State Highway Commission to perform its function as set forth by the

Legislature. As we stated in *State ex rel. Sego v. Kirkpatrick, supra,* 86 N.M. at 362, 524 P.2d at 978:

> The power of veto, *like all powers constitutionally conferred upon a governmental officer* or agency, is not absolute and may not be exercised without any restraint or limitation whatsoever. The very concept of such absolute and unrestrained power is inconsistent with the concept of "checks and balances," which is basic to the form and structure of State Government created by the people of New Mexico in their constitution, and is inconsistent with the fundamental principle that under our system of government no man is completely above the law. See, *Jenkins v. Knight,* 46 Cal.2d 220, 293 P.2d 6 (1956). (Emphasis added.)

The people granted the Legislature the power to determine whether the State Highway Commission would be subject to the control of the Governor. The Legislature could have granted such power to make the State Highway Engineer responsible to the Governor. In fact the 1977 Legislature did give the Governor a means of controlling the appointment of the engineer in the future. The question before us now is whether § 55–2–1, et seq., supra, exempts the position of State Highway Engineer, or supercedes § 5–4–3, supra.

Section 55–2–1.6, supra, establishes the position of State Highway Engineer and provides for his appointment. Subsection C also provides:

> *He shall devote his entire time to his duties* and shall receive an annual salary set by the commission. *No state highway engineer, during his period of service, shall hold any other office* under the laws of this state or of the United States. (Emphasis added.)

Section 55–2–1.6(A), N.M.S.A.1953 (Supp. 1975) provides that the State Highway Department shall be under the control of an "executive officer" to be known as the "state highway engineer." Section 55–2–15, N.M.S.A.1953 provides that the State Highway Commission shall appoint a State Highway Engineer who shall be in general charge of the works of the commission and be its executive representative. This statute also provides that the *State Highway Engineer shall hold office during the pleasure of the State Highway Commission.*

Section 5–4–3, supra, permits respondent to transfer employees where he sees fit:

> The governor is further authorized, subject to the approval of the state board of finance, to transfer, temporarily from one office, department or institution to another office, department or institution, such employees as in his judgment may be necessary or convenient at any time to further the economical and efficient conduct of the state government and without regard to the appropriation out of which such employee may be paid; Provided, that the governor shall have the power to designate and employ a personnel director who shall assist him in the performance of the duties imposed upon the governor by the terms of this section.

Section 5–4–3, supra, contemplates that a public officer can perform the duties and obligations of any position to which he is temporarily transferred. Section 55–2–1.-6(C) indicates that the State Highway Engineer cannot carry out the duties of any other position. Section 5–4–3, supra, does not provide for the removal of an officer before the transfer is effected, and respondent does not contend that his actions constitute a removal. So that petitioner still retains his position and title but must devote his time and effort to duties in another department. These sections are clearly inconsistent insofar as they apply to the State Highway Engineer.

We recognize that repeals by implication are not favored, and wherever two statutes can be reconciled and thereby preserve the intent of each, we are so bound to construe them. *State v. New Mexico State Authority,* 76 N.M. 1, 411 P.2d 984 (1966). It is also well established that statutory words are to be used in their ordinary and usual sense unless the contrary is apparent. *State v. Reinhart,* 79 N.M. 36, 439 P.2d 554 (1968). The ordinary meaning of "He shall devote his entire time to his

duties" is apparent. We assume that the Legislature is well informed as to existing statutory and common law, *Bettini v. City of Las Cruces*, 82 N.M. 633, 485 P.2d 967 (1971), and that it does not intend to enact useless statutes, *Griego v. Health and Social Services Dept. of State*, 87 N.M. 462, 535 P.2d 1088 (Ct.App.1975). Furthermore, when the Legislature enacts a new statute we presume that it intended to change the law as it previously existed. *Bettini v. City of Las Cruces, supra.* Section 55–2–1.6(C) was enacted in 1967; § 5–4–3 was enacted in 1935. The Legislature must have been aware of the possibility of a temporary transfer of the State Highway Engineer by the Governor. Although the Legislature did not specifically exempt the position from § 5–4–3, the provisions mentioned above concerning his devotion of time exclusively to those duties, the provision relating to authority of the State Highway Engineer as an executive officer of the department, and the provision that the State Highway Engineer shall hold office at the pleasure of the State Highway Commission, would indicate that § 5–4–3 was not intended to apply to the State Highway Engineer.

A statute should be construed to give effect to all of its provisions. *State v. Herrera*, 86 N.M. 224, 522 P.2d 76 (1974); *State v. New Mexico State Authority, supra; Martinez v. Research Park, Inc.*, 75 N.M. 672, 410 P.2d 200 (1965). If we were to construe § 5–4–3, supra, to apply to the State Highway Engineer, we would be abrogating the express provisions of § 55–2–1.6(C), supra. This we cannot do. Section 5–4–3, supra, is a general statute which permits the respondent to rearrange the positions of state employees. Section 55–2–1.6(C) is a statute which applies specifically to the position of State Highway Engineer. It is a well-established rule that a specific statutory provision will control over a general provision where inconsistent. *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *New Mexico Bureau of Rev. v. Western Elec. Co.*, 89 N.M. 468, 553 P.2d 1275 (1976); *State v. Lujan*, 76 N.M. 111, 412 P.2d 405 (1966).

We note a motion by petitioner and intervenor for leave to file an amended petition for writ of mandamus to add additional parties. It is claimed in the motion that the Department of Finance and Administration, on orders from respondent, has started dishonoring all vouchers and all contracts signed by petitioner Bird since he was ordered transferred by respondent. Respondent has filed a motion in response. In light of this opinion both motions are denied.

Therefore, we hold that the petitioner is not subject to the transfer provisions of § 5–4–3, supra, and a writ of mandamus will issue ordering respondent to cease, desist and refrain from removing or transferring petitioner Bird or from interfering with the petitioner's performance of his duties as State Highway Engineer contrary to the laws of the State of New Mexico.

IT IS SO ORDERED.

EASLEY and FEDERICI, JJ., concur.

SOSA and PAYNE, JJ., respectfully dissent.

SOSA, Justice (dissenting).

I cannot agree with the majority opinion and, therefore, I must dissent.

My dissent is not positioned on the merits, and consequently, I will not respond to those substantive arguments since it is my firm belief that this Court should never be used in the manner requested. The district court has concurrent jurisdiction to hear the matter and this action should have first been heard by that court.

My dissent is premised on three grounds:

(1) In actuality this is a petition for a writ of prohibition and prohibition never lies against state officers.

(2) Assuming arguendo that the petition is properly a writ of mandamus, this Court should still refrain from acting in this matter since mandamus only lies to direct the performance of a nondiscretionary, ministerial task. It never issues to compel or restrain official discretion.

(3) The majority opinion has the force and effect of a peremptory writ. If a writ is to be issued it would be more appropriate to issue an alternative writ since the Governor was denied due process of law inasmuch as he was not allowed to argue orally before this Court and yet the petitioner did. Albeit the Governor submitted briefs in response to the petitioner's briefs, he was still denied due process of law since he was not afforded the same opportunity as the petitioner, to wit the right to be heard equally in arguments before this Court.

## I. *Mandamus vs. Prohibition*

It has been stated that a writ of prohibition is the exact counterpart of a writ of mandamus, since mandamus is an affirmative remedy, commanding certain things to be done, while prohibition is negative in nature and forbids the doing of certain things which ought not to be done. J. High, A Treatise on Extraordinary Legal Remedies, Embracing Mandamus, Quo Warranto and Prohibition, § 763 (3d ed. 1874).

Although, in the case at bar, the petition is styled as being mandamus, in its prayer it requests of this Court to order the Governor "to cease, desist and refrain from removing or transferring the petitioner. . . ." These words are negative in nature since they forbid the Governor from transferring Mr. Bird. It is, therefore, my belief that this is in actuality a Petition for a Writ of Prohibition.

We must next look to the authority behind writs of prohibition. The N.M.Const. art. VI, § 3 provides in pertinent part:

The Supreme Court shall have original jurisdiction in quo warranto and mandamus against all state officers, boards and commissions, and shall have a superintending control over all inferior courts
. . . . .

Since the Court derives its power to issue writs of prohibition from its power of superintending control over inferior courts, its original jurisdiction in prohibition is confined to inferior courts and does not extend to prohibitory actions against state officers or agencies. *Atchison, T. & S.F. Ry. Co. v. State*, 43 N.M. 503, 95 P.2d 676 (1939). The *Atchison* case stated:

Our original jurisdiction in prohibition is confined to 'inferior courts' and does not extend to prohibitory actions against state officers. As to state officers at least, our original jurisdiction is confined to mandamus and quo warranto. Our original jurisdiction in prohibition arises from our superintending control over inferior courts and is confined to them.

43 N.M. at 512, 95 P.2d at 682.

Accordingly, since this Court has no jurisdiction to issue a writ of prohibition against a state officer then we lack the authority to grant the relief requested by Mr. Bird.

The majority makes the bold statement that, "[c]learly petitioner's requested relief is neither styled prohibition nor sounds in prohibition." I agree with the first portion of the statement since it is *clear* that the petition is not styled prohibition; however, the language in the prayer is inescapable. The intent of it remains negative inasmuch as we are to *prohibit* the Governor from transferring Mr. Bird. As previously stated, this Court is without proper jurisdiction to issue a writ of prohibition against state officers. *Atchison, supra.*

The majority opinion cited *Kiddy v. Board of County Com'rs of Eddy County*, 57 N.M. 145, 255 P.2d 678 (1953) as stating, "[p]ublic functionaries may be restrained by mandamus from doing what they know is an illegal act." [57 N.M. at 152, 255 P.2d at 683]. It is not apparent to me that what the Governor has seen fit to do is an illegal act. In his view he is legally operating under a statute which he has the official discretion to use. The quoted section from *Kiddy, supra*, has no application in this case; how can the Governor know that what he is seeking to do is illegal when he is acting under a legislative enactment which appears to allow him to do what he accomplished? When the Governor, upon advice from the Attorney General, acts under a statute that has not been declared unconstitutional, and which petitioner concedes is constitutional, demonstrates that this case is not a clear one for mandamus to

issue—particularly peremptorily. This clearly indicates to me that it is inappropriate for this Court to act in this extraordinary manner since we should have the benefit of the First Judicial District Court's findings upon an evidentiary hearing before it.

## II. *Mandamus Against Public Officers*

### A. Concurrent Jurisdiction

The N.M.Const. art. VI, § 3 states that the "Supreme Court shall have original jurisdiction in . . . mandamus against all state officers." It is also stated in the N.M.Const. art. VI, § 13 that "district courts . . . shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition, and all other writs . . . ." Also, § 22–12–3, N.M.S.A.1953 gives the district court "exclusive original jurisdiction in all cases of mandamus, except where such writ is to be directed to a district court or a judge thereof in his official capacity, in which case the Supreme Court has exclusive original jurisdiction . . . ."

The conflict between article VI, § 6 of the New Mexico Constitution and § 22–12–3 has never provided much difficulty since irrespective of the statute this Court has regularly exercised original jurisdiction in mandamus. *State ex rel. Castillo Corp. v. N. M. St. T. Com'n*, 79 N.M. 357, 443 P.2d 850 (1968). However, in Dumars and Browde, Mandamus in New Mexico, 4 N.M. L.Rev. 155 (1974) at page 157 it is stated:

Supreme Court Rule 12 has given force and effect to the policy behind the statute [§ 22–12–3], by requiring that an original petition which could have been brought in a lower court must set forth 'the circumstances necessary or proper to seek the writ in the supreme court [sic].' (footnotes omitted).

As a footnote the authors stated:

No doubt the legislature, in enacting § 22–12–3, recognized that the primary function of the supreme court [sic], as the ultimate appellate tribunal of the State, should not be undercut by the needless concern for cases which could first be presented to an inferior tribunal.

Id. Therefore, it is my position that the policy behind § 22–12–3 is that "absent a compelling justification for bringing the action in this Court the district court is the proper forum for a mandamus action against anyone other than a district court judge." Id.

Supreme Court Rule 12 also leads me to interpret § 22–12–3 as requiring a compelling justification for first bringing the action to this Court in lieu of the district court. Rule 12 states that if the application for the writ could have been made to some other court with concurrent jurisdiction then the petition must set forth the circumstances making it necessary or proper to seek the writ from this Court. Thus, "the standard to be applied is whether the particular case is of such public importance to the State as to require original consideration" by this Court. 4 N.M.L.Rev. at 157.

Query: What meets the standard "of such public importance?"

It can plainly be observed that this is a great controversy. The newspapers have followed this episode with intense interest. Much has been written about the division within the highway commission and the position the Governor has taken in the matter. Since such a commotion has been made of the fracas this might lead an undiscerning eye to believe that the controversy requires our immediate attention. Unlike my brothers in the majority, I am not so swayed. All the attention placed on the squabble has not itself elevated it to the position of a legal battle which is *ripe* for appellate review and one which requires our immediate attention in an extraordinary manner. There are many cases in which the litigants would like to have us hear their matters immediately so that they may be saved from the time and expense of first having the matter heard on its merits in lower court. But our system of appellate review requires litigants to develop their case fully in lower courts thereby bringing out all the facts and legal issues which allow us to take a judicious look at what has occurred below. Now, the majority has seen fit to dispense with judicial restraint.

The case does not meet the standard "of such public importance" since it is my belief that it only involves a political battle within the executive branch. We must never become embroiled in a political fracas. As in all other cases in which the lower court has concurrent jurisdiction this case should first be deposited in such district court.

I am also not persuaded by the majority's reasoning that the case would be moot before we reviewed it if it first had to be heard in lower court. There are many cases which have become moot before this Court reviewed the lower court's decision. This has never before had us stumbling over ourselves in order to reach a quick decision, and therefore, we should not make a precedent of it now. Besides if it did become moot that fast, this may be an indication of how insignificant the case really is.

Hence, since this controversy is not of sufficient public importance, then § 22–12–3 read in pari materia with Supreme Court Rule 12 dictates that the lower court should first hear the matter. This Court should then apply judicial restraint and avoid interfering with the political fight until all the facts and legal issues have been developed by the lower court. I cannot resist the impulse of looking down the "highway" and foreseeing the problems that may result from this case since it sets such a dangerous precedent by creating an enormous "chuckhole" for future cases involving state officials.

B.  Discretion of Public Officers

In *Kiddy, supra*, this Court cited *First National Bank v. Hayes*, 186 Iowa 892, 171 N.W. 715 (1919) in which the Supreme Court of Iowa defined official discretion as being:

[W]hen applied to public functionaries, as the power or right conferred upon them by law of acting officially under certain circumstances, according to the dictates of their own judgment and conscience, and not controlled by the judgment or conscience of others.

171 N.W. at 718.

This Court has previously stated in *Kiddy, supra*, that:

[A] nondiscretionary or ministerial duty exists when the officer is entrusted with the performance of an absolute and imperative duty, the discharge of which requires neither the exercise of official discretion nor judgment.

57 N.M. at 149, 255 P.2d at 681.

Accordingly, I advance the argument that what the Governor has chosen to accomplish is fairly within his discretion because § 5–4–3, N.M.S.A.1953 is a valid statute which the Legislature has allowed to remain in full force and effect. Since the Governor has chosen to act under § 5–4–3 it should not be said, as the majority states, that his actions are "illegal."

The majority states that the "[p]etitioner is being deprived of the duties, responsibilities and authority he was given by law when he was properly appointed . . ." However, the majority conveniently overlooks the inescapable fact that the Governor was *elected* to carry out his duties and responsibilities. The opinion, therefore, deprives the Governor of exercising official discretion, and I believe this may be an invasion by this Court of the separation of powers.

The actions of the Governor are discretionary since he was acting within a law which the Legislature has left for him to act under. Just because § 5–4–3 is contradicted by §§ 55–2–1 et seq., which were more recently enacted, does not erase the fact that the Governor could in his own official discretion choose to act under the older statute. Mandamus is improper since it only lies to direct the performance of a nondiscretionary, ministerial task. *Kiddy, supra.*

This Court has no business interfering with a discretionary act by the Governor since it dangerously interferes with the separation of powers established by both the Constitution of the United States and the New Mexico Constitution. The majority opinion makes quick reference to *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 524 P.2d 975 (1974). It involves the only other

time this Court issued mandamus against the chief executive of this State. The *Sego* case, *supra*, is distinguishable and therefore inappropriate since it involved an *unconstitutional* use of the Governor's veto power. The petitioner in the case at bar has not asserted that what Governor Apodaca has done is unconstitutional. Mandamus would necessarily lie if the Governor's actions were unconstitutional; but there being no such allegation the *Sego* case, *supra*, has no application.

Mandamus against the state's chief executive should be used sparingly, and this is not the proper case for it to be used.

The statute is not unconstitutional nor were the Governor's acts thereunder illegal.

### III. *The Majority Opinion—Peremptory Writ*

The majority opinion has granted the petitioner a peremptory writ. This was accomplished by granting the relief sought without first issuing an alternative writ. The alternative writ would allow the Governor the same right to oral argument that was accorded to the petitioner. No concern seems to be expressed that this may be a violation of due process or constitutionally suspect.

A short discussion of peremptory writs is necessary. Section 22–12–7, N.M.S.A.1953 reads:

> When the right to require the performance of the act is clear, and it is apparent that no valid excuse can be given for not performing it, a peremptory mandamus may be allowed in the first instance; in all other cases the alternative writ shall be first issued.

Therefore, before a peremptory writ could be issued the Governor's duty to act must be clear and it must be readily apparent that there is no valid excuse for not performing it. As previously stated, the Governor is justified in his actions in transferring state employees since § 5–4–3 remains operative. This immediately removes the Governor's actions from the area in which a peremptory writ would normally apply since the Governor has lawfully utilized the statute. A peremptory writ only lies when that which mandamus compels is *absolutely clear*. The circumstances in the case at bar do not reveal that the Governor has an absolute duty to observe §§ 55–2–1 et seq., N.M.S.A.1953 (Supp.1975) over § 5–4–3. The statutes have remained in full force and effect and the Governor, through his discretion, chose to utilize the temporary transfer statute. The naked fact that § 5–4–3 remains in existence should at the very least demonstrate that the Governor's duty to act in the manner compelled by mandamus is not absolutely clear.

If a writ is to be issued the Court would be much better advised to grant an alternative writ. This would then allow the Governor an opportunity to orally argue his points and authorities against mandamus.

In 4 N.M.L. Rev., *supra*, it is stated on page 161:

> Although the New Mexico Supreme Court held in an early case that issuance of a peremptory writ did not contravene due process of law, more recent cases expanding the concept of due process have so undercut that earlier ruling as to render use of the peremptory writ constitutionally suspect and inadvisable. (footnotes omitted).

This point is well taken. Albeit the Governor submitted briefs in response to the petition he has not been afforded an opportunity to orally argue before this Court.

For the above stated reasons, I dissent and issue a caveat to my brothers to apply judicial restraint. This case is not of such significant public importance which requires our immediate attention. It belongs in the district court where all other political fights either survive or die. I am sure that there are many underlying issues and, therefore, we are only seeing the tip of the iceberg.

This is nothing more than a political "hot potato" within the executive branch, which the majority seems to relish entertaining on its merits. I only hope that this precedent does not serve to force us to eat it without the benefit of the necessary ingredients and

cooling period which a factual hearing in the lower court would supply. If we decide the controversy without first allowing it to be developed, as any other case that arrives on appeal, this Court might find itself setting a dangerous precedent. Additionally, the mere fact that this Court is split 3–2 on this decision is indicative that this case is not a proper case for mandamus to lie—especially peremptorily. A writ of mandamus only lies to compel a nondiscretionary, ministerial task. A peremptory writ is only issued when the duty to act in the manner compelled by mandamus is clear with no room for argument that the acts of the state officer are discretionary. There existing dissension on this Court should illustrate to the majority that it is not a clear case for mandamus and therefore this Court is ill-advised to grant the writ.

For all the foregoing reasons—any one of which would suffice—I dissent, and would deny the issuance of *any* writ.

PAYNE, Justice (dissenting).

I respectfully dissent for two reasons:

A. Except in rare instances, the Supreme Court should not be used as the initial forum to entertain disputes. The rare instances where original jurisdiction is taken are recognized in the majority opinion as involving cases when (a) the issues are of sufficient public importance, (b) there are no factual disputes but only legal questions to be resolved, and (c) there is no plain, speedy and adequate remedy in another forum. I do not disagree with the analysis, however, I fail to find its applicability in the present case.

There is no doubt that the issues of this case are of great public interest. Public interest, however, does not of itself rise to the status of public importance. The parties have become so polarized in their respective positions that ultimately a court would be required to resolve the conflict. But at the time the petition was filed the conflict did not interfere with the orderly conduct of business at the State Highway Department so as to justify invoking the original jurisdiction of this Court. The De-

partment did not close its doors and the employees of the Department continued to perform their normal duties in their usual way. Even in the absence of the State Highway Engineer who has undoubtedly been absent for vacations or other reasons, the Department has functioned normally.

The public importance of this case has been overemphasized by the petitioners who for reasons personal to themselves seek to promote the dispute into one in which the Supreme Court should exercise original jurisdiction. In my mind there is no such urgency.

In determining whether there are factual disputes which need resolution before the Supreme Court entertains jurisdiction in this case, we must rely upon the oral presentation of petitioners and briefs of the parties. The respondent has not had the opportunity to orally argue his case. The procedural posture of the cause precludes development of factual considerations. We should only act in such cases when there are *no* factual differences to interfere with the legal issues involved. We have no such assurance in this case.

The third jurisdictional consideration is whether there was a plain, speedy and adequate remedy in another forum for the petitioners. In other words, could the district court have adequately dealt with the matter to avoid serious public harm. The majority recognizes the concurrent jurisdiction of the district courts with the Supreme Court in issuing writs of mandamus. Any relief given by the Supreme Court in this case could have been obtained in the district court. The possibility of an appeal from the district court of any decision rendered would possibly protract the litigation and delay an ultimate resolution, but so it is in any case. No arguments have been presented to show that a delay would have serious effects on the operation of the State Highway Department. A district court could have given any temporary relief necessary to prevent harm to the state while the case proceeded through normal channels. Any personal damage suffered by the Highway Engineer could have been ade-

quately remedied by the district court. Whether the Highway Department might be injured by his absence could only be supported by factual considerations not properly before this Court.

B. My second difference with the majority is of a more philosophical nature. I cannot dispute the conclusions reached by the majority as to the interpretation of the statutes involved, if we accept the premise that the State Highway Commission is constitutionally endowed with authority independent of the Executive. The Highway Department has had a checkered career in the history of the state. To avoid apparent abuses of executive authority, the Highway Commission was organized to have such power and perform such duties as provided by law. N.M.Const. art. V, § 14. The Legislature has the responsibility of defining what powers and duties the Commission would perform, but the phrase "as provided by law" requires the legislative enactments to be consistent with the other provisions of the New Mexico Constitution.

The powers of the government of New Mexico are clearly divided into three branches; the legislative, the executive and the judicial. N.M.Const. art. III. This is a scheme that has proven effective in the federal government and in most states. Although political theorists agree that such a system lacks the efficiency of other types of government, the checks and balances provided insures more control of government by the citizens.

Counsel for the petitioners reluctantly admitted that the legislative enactments implementing art. V, § 14 have created a new creature in the state—a fourth branch of state government. If so, this branch is not accountable to the voters. It is not accountable to the Governor. The Legislature would only have control over the Highway Department through the appropriations of funds and through its ability to change the structure and function of the Highway Department. Efficiency has perhaps resulted but only through the violations of the basic constitutional principles insuring accountability.

The Governor is vested with the supreme executive power of the state. N.M.Const. art. V, § 4. The Highway Commission is created and included as a part of the Article on the executive branch of government. It is true that the Legislature provides the details of the operations of the executive, but it should not do so to the extent of infringing upon the basic constitutional prerogatives of the executive branch.

Viewed by the yardstick of the New Mexico Constitution, I feel that interpreting the provisions of § 55–2–1 et seq., N.M.S.A.1953 as precluding any executive control by the Governor is incorrect. I realize that this Court has not previously viewed the Highway Commission's activities by such absolute standards. *In re Thaxton,* 78 N.M. 668, 437 P.2d 129 (1968). I also recognize that such a delineation of powers and authorities is contrary to the emotion causing the constitutional amendment that created the Highway Commission. I feel, however, that whatever executive abuses might have originally prompted the Legislature to remove the Highway Engineer from all executive control by the Governor may well have insulated the Highway Department from accountability to any but the Highway Commissioners.

I would deny the petition for mandamus.