624 P.2d 1017

**BOARD OF EDUCATION OF ALAMOGORDO PUBLIC SCHOOLS DISTRICT NO. 1, Appellant,**

**v.**

**Sharon BRYANT and the New Mexico State Board of Education, Appellees.**

**No. 4289.**

Court of Appeals of New Mexico.

July 15, 1980.

S. Thomas Overstreet, Overstreet & Sandenaw, P. C., Alamogordo, for Board of Education of Alamogordo Public School District No. 1.

Steven L. Tucker, Jones, Gallegos, Snead & Wertheim, Santa Fe, for appellee Sharon Bryant.

Jeff Bingaman, Atty. Gen., John F. Kennedy, Asst. Atty. Gen., Santa Fe, for appellee New Mexico State Board Of Education.

## OPINION

WALTERS, Judge.

Sharon Bryant was employed by the Alamogordo Public Schools for four years, obtaining tenure with her 1978–79 contract. She was not reemployed for the 1979–80 school year after her father was elected to the local school board and took office in March 1979. The local board terminated her employment because it concluded that her continued employment would be a violation of § 22–5–6, N.M.S.A.1978, the statute prohibiting nepotism in public school districts. The teacher appealed that decision to the State Board of Education, and the State Board reversed the local board. The Alamogordo Board of Education now appeals the decision of the State Board.

The statute giving rise to this suit reads as follows:

No local school board shall employ or approve the employment of any person in any capacity by a school district if the person is related by consanguinity or affinity within the first degree to any member of the school board governing the district. This section does not prohibit the continued employment of any person who is employed by a school district on July 1, 1972, and who, on that date, is related within the prohibited degree to a member of the governing school board.

The State Board and appellee Bryant contend the State Board was correct in determining that the statute was ambiguous, and its interpretation, i. e., that the words "employ or approve the employment" means "initial hiring" and "initial approval of employment," was a proper interpretation, for four reasons: (1) the title of the act indicates its purpose is to prevent hiring because of an employee's relationship rather than by reason of his (her) qualifications; (2) that construction of the statute's meaning is consistent with the interpretation given by the State Board and its attorney general advisors over a period of years, and the administrative interpretation is not to be lightly overturned but is entitled to great weight; (3) an interpretation which does not conflict with other statutes or raise constitutional questions, which they contend the local board's construction would do, is to be preferred; and (4) the statute as construed by the State Board is in pari materia with other nepotism statutes, which is also to be desired in construing statutes.

We have no quarrel with the above rules of statutory construction. They are not applicable, however, until there has been a valid determination of ambiguity, and appellees have not successfully met the local board's challenge to the State Board's finding that the statute was ambiguous.

■ If, after applying the common, usual, ordinary and everyday meaning to words in a statute, its meaning is unclear, the legislative intent clearly indicates another meaning, or a different meaning must be applied to prevent absurdity, then a statute may be declared ambiguous and resort may be had to the rules of construction to determine its meaning. *State v. Hernandez*, 89 N.M. 698, 556 P.2d 1174 (1976).

■ This statute mandates that "*no* local school board *shall employ or approve the employment* of *any person*" within the prohibited degree of consanguinity or relationship to a local school board member. The only persons excepted are those who were employed by the school district on July 1, 1972, and appellee Bryant is not a member of that group. The statute does not refer to reemployment as an exception, nor does it exempt tenured personnel. We see nothing to indicate a legislative intent that the Legislature had meant to so restrict the application of the statute. Indeed, bills were introduced in 1977 and 1979 to amend the statute to limit its meaning in exactly that manner, and neither time did the Legislature approve the requested amendments. Its inaction unquestionably points more directly toward an intent that the statute means what the Alamogordo Board read it to mean than to any suggestion that another meaning was intended.

Is the result of reading this statute to include already employed teachers absurd? We think not, and particularly not under the facts of this case. A simple solution to removing the allegedly "absurd" result would be for family members within the prohibited degree of kindred to refrain from seeking election to local boards. In this case, the family members, including the board member and the affected teachers, one of whom is appellee, conferred and agreed that the father should run for election and should not resign once elected. They combined to flout the plain language of the law.

Aside from the facts peculiar to this case, however, there are other considerations. Local school boards employ and fix the salaries of their superintendents; they approve or disapprove personnel hirings and discharges recommended by the superintendent; they fix the salaries of all school employees; and they acquire and dispose of property. *See* § 22–5–4, N.M.S.A.1978. The possibility for abuse of any of these powers insofar as they may affect any related employee, tenured or otherwise, is manifest. The employee-relative might be pressed upon the board for selection as the superintendent; the approval of someone other than a relative for administrative or supervisory positions might be withheld; the fixing of a relative's salary might be another matter of coercive pressure; purchases might be made to enhance the relative's working conditions to the exclusion of the same benefits for other employees.

Legislation to restrict the likelihood of such undesirable consequences cannot be said to be absurd.

Appellee Bryant further argues that the correctness of the State Board's reliance on advice of various assistant Attorneys General over the years, that the nepotism statute did not apply to persons already employed at the time the board member assumed office, was buttressed by opinions from the same sources that termination of a tenured employee would deprive her of protected property and liberty rights without due process of law. The State Board substantially adopted that position in its Conclusion 5:

> Sharon Bryant had a property right and a liberty right in her continued employment with the Board of Education of the Alamogordo Public School District No. 1 within the meaning of the Fourteenth Amendment to the Constitution of the United States. The Board of Education of the Alamogordo Public School District No. 1 failed to establish by preponderance of the evidence presented that sufficient cause existed for its decision.

■ Appellees rely on *Slochower v. Board of Regents*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), and *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), for the proposition that by reason of Sharon Bryant's attainment of tenure in the Alamogordo Public School system under § 22–10–14, N.M.S.A. 1978, she had acquired constitutionally protected liberty and property rights in her continued employment. The constitutional right under the Fourteenth Amendment discussed in both of those cases was described as the "protection of the individual against arbitrary action," *Slochower, supra*, 350 U.S. at 559, 76 S.Ct. at 641, and to "procedural due process" in the termination of property interests which "stem from an independent source such as state law," *Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709. Neither case holds that employment rights are constitutionally created, nor that they may not be terminated. A teacher holding property rights may lose them if due process is not offended in effecting their loss. *See Slochower*, at 350 U.S. 559, 76 S.Ct. at 641.

The "liberty" right referred to in *Roth, supra*, partially pertained to the teacher's claim that his contract was not renewed because he had made statements critical of school administration and it therefore violated his right to free speech. The Court expanded the "liberty" concept to embrace, also, termination charges that "might seriously damage his [Roth's] standing and association in his community" or impose upon him "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." 408 U.S. at 573, 92 S.Ct. at 2707. But facts and circumstances such as those are missing from this case. There is no "liberty" issue to be decided here. Even if there were, the Fourteenth Amendment provides that no state shall "deprive any person of … liberty … without due process of law." The inquiry again would return to the point of determining whether *due process* had been observed if one had been deprived of a liberty recognized by the Constitution.

The deprivation of rights, then, if any rights exist, is not inherently and automatically unlawful. It is the failure to accord due process in exercising the power which results in the loss of "life, liberty, or property" that is forbidden. The fact of Sharon Bryant's attainment of tenure under state law is the basis for appellees' contention that she had a property right to continued employment.

The statutes relating to tenure, §§ 22–10–13, –14, and –15, N.M.S.A.1978, were enacted by Laws N.M.1967, ch. 16, §§ 115, 116, and 117, and were formerly §§ 77–8–10, –11, and –12, N.M.S.A.1953. They were slightly modified in 1975, resulting in only "minor changes." *See* Compiler's Annotations, 1975 Supplement to the 1953 N.M. S.A. Compilation. As in the original enactment, the typical teacher's contract is renewed on an annual basis, whether the teacher be tenured or not. Section 22–10–11, N.M.S.A.1978 [§ 77–8–8, N.M.S.A.1953]. Section 22–10–15, almost identical to the

original 1967 statute, provides that refusal to reemploy a tenured instructor may be accomplished only by serving a written notice of termination on the instructor before the last day of the school year, stating the reason for declining to reemploy and setting a date for a hearing, conducting the hearing, and finding "good and just cause" for refusing to reemploy. The statutory procedure for refusing to reemploy Sharon Bryant was followed in this case.

The nepotism statute, on the other hand, was enacted in 1971. It is, therefore, a statute enacted after the tenure laws took effect; it is one the Legislature twice has refused to amend to avoid the inclusion of already-employed teachers within its prohibitions; and it is one to which the presumption must apply that the Legislature was informed regarding the existing tenure laws when it enacted the nepotism statute. *State ex rel. Bird v. Apodaca,* 91 N.M. 279, 573 P.2d 213 (1977). That the later statute did not exclude tenured teachers, or teachers employed on or after July 1, 1972 but before a relative became a member of the employing school board; and that amendments were not adopted, present exceptionally strong evidence that those employees were not to be excluded.

█ Before discussing what we consider to be the sole issue before us—whether Sharon Bryant was afforded due process—we first observe that we are not persuaded by the decisions of *Hinek v. Bowman Public School Dist.,* 232 N.W.2d 72 (N.D.1975), or *Beckman v. Bateman,* 1 Utah 2d 153, 263 P.2d 561 (1963), cited to us by appellee Bryant. *Hinek* construed "employed" to mean "initially hired" because the legislative intent expressed by the North Dakota Code Revisions Committee indicated the word was intended to be so interpreted. The *Beckman* court held Utah's nepotism statute unconstitutional, unable to find a reasonable relationship between the public welfare and continued employment of a teacher related to a school board member within the prohibited degree. We have already stated our analysis of some of the possible evils of nepotism we

consider inimical to the public welfare. It is the policy of the appellate courts of New Mexico to presume statutes to be constitutional rather than unconstitutional. *City of Albuquerque v. Jones,* 87 N.M. 486, 535 P.2d 1337 (1975); *Saiz v. City of Albuquerque,* 82 N.M. 746, 487 P.2d 174 (Ct.App.1971). A large discretion is necessarily vested in the legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests. *State v. Spears,* 57 N.M. 400, 259 P.2d 356 (1953). The Legislature has determined that as a matter of public policy persons related within the first degree shall not occupy an employer-employee status in local school systems, and since the act is not violative of the constitution, the court will not substitute its judgment for that of the legislature. *State v. Lavender,* 69 N.M. 220, 232, 365 P.2d 652 (1961). We see no constitutional infirmity in the statute.

█ Was Sharon Bryant deprived of her position without due process of law? *Roth, supra* variously states the procedure that will supply due process in a teacher termination case: "he must be afforded an opportunity for some kind of hearing"; the employer "must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." 408 U.S. at 570, fn. 7, 92 S.Ct. at 2705, fn. 7.

If the teacher's reputation or integrity has been impugned, "notice and an opportunity to be heard are essential." *Id.* at 573, 92 S.Ct. at 2707. In a footnote to the latter statement, Justice Stewart comments, however: "Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." *Id.,* fn. 12, 92 S.Ct. 2707, fn. 12. Reputation is not an issue here, but the message is the same: Once Sharon Bryant has received notice and a full and fair hearing, the local board remains free to deny reemployment if there exists "good and just cause." Section 22–10–15 D, N.M.S.A.1978.

There was a prior hearing accorded to appellee. The "good and just cause" in her case was an unambiguous, valid, and existing statute prohibiting her reemployment which the Legislature considered paramount to the benefits it provided in its tenure laws. There was no denial of due process.

The State Board of Education was in error in overturning the decision of the local board, and we now reverse the State Board and reinstate the ruling of the Board of Education of Alamogordo Public Schools District No. 1.

IT IS SO ORDERED.

WOOD, C. J., concurs.

LOPEZ, J., dissents.

LOPEZ, Judge (dissenting).

I respectfully dissent.

The statute in question, § 22–5–6, N.M.S.A.1978 is ambiguous and unconstitutional. The State Board of Education correctly interpreted it. I believe that the State Board's Conclusion of Law No. 4 which reads as follows, is supported by the evidence and by law.

4. As used in § 33–5–6, N.M.S.A.1978 the phrase "employ or approve the employment of" should be construed so that the prohibition of the statute applies only to persons who are initially or originally employed or hired by a school board after a relative within the prohibited degree has lawfully been elected to and begun his term on that board and so that the prohibition thereof does not apply to the re-employment of a person whose initial or original employment or hiring by the board occurred before a relative within the prohibited degree has lawfully been elected to and begun his term on the board.

See *Hinek v. Bowman Public School District No. 1*, 232 N.W.2d 72, (N.D.1975).

Also, the State Board's Conclusion of Law No. 5 is supported by the evidence and by law.

I find the act to be unconstitutional because it deprives the appellee Bryant of certain property rights, and liberty without due process of law contrary to the Federal and New Mexico Constitutions.

I do favor nepotism statutes because they help to operate better government. However, the statute in question must be modified and clarified to meet constitutional standards so as to protect everyone concerned.

Consequently, I would affirm the decision of the State Board of Education.